CHELF ET AL. *v.* STATE OF INDIANA.

[No. 28,019. Filed December 28, 1944.]

A. B. Farb and T. Ernest Maholm, both of Indianapolis, for appellants.

James A. Emmert, Attorney General, Frank Hamilton, First Deputy Attorney General, Forrest P. Jones, Deputy Attorney General, and Saul I. Rabb, Deputy Prosecuting Attorney of Marion County, for State.

RICHMAN, J.—The prosecution of an indictment for murder in the first degree resulting in this appeal was begun in the Criminal Court of Marion County and completed in the Boone Circuit Court where appellants November 23, 1943, filed a joint and several motion for discharge because of delay in bringing them to trial. Reliance is placed upon the constitutional mandate that "Justice shall be administered . . . speedily and without delay," Art. 1 § 12, Indiana Bill of Rights, and also upon § 9-1402, Burns' 1933, § 2238, Baldwin's 1934. The rights of a defendant under this statute are not coextensive with his rights under the constitution as we shall show. Answer was filed by appellee, there was a hearing at which evidence was submitted, each appellant testifying, and the motion was overruled which is the only error assigned. Thereafter appellants were tried by jury upon the indictment and convicted of manslaughter. From a judgment imposing indeterminate sentences of 2 to 21 years this appeal is taken.

Polley's appeal is controlled by considerations that do not apply to his coappellants and therefore requires separate disposition. The homicide occurred March 7, 1936, in Marion County. The three appellants and one Jackson were indicted for murder December 7,

1936. Polley was then in California in violation of his parole from the Reformatory to which he had been committed in 1932. He was apprehended in 1939 and arrived in the Marion County jail May 2. An attorney he employed entered a special appearance June 22, filed motions to be let to bail and to quash the indictment July 10, and motion for separate trial September 8, on which day the latter two motions were passed upon and he was arraigned and pleaded not guilty. By inference from a pleading introduced in evidence at the aforesaid hearing, trial was set for February 5, 1940, continued at the State's request and reset for June 11. On that day evidence was heard on his motion to be let to bail but the hearing was not (and apparently never was) completed. July 9, 1940, he filed separate motion for discharge and four days later upon written motion of the prosecuting attorney, based on insufficiency of available evidence, the indictment was *nolled*. In June, 1940, he was returned to the Reformatory as a parole violator and in October transferred to the State Prison, where he has remained serving the 1932 sentence with the exception of the occasions requiring his presence in subsequent proceedings. A new indictment in identical language was returned April 19, 1942. A month later the three appellants filed motion to be returned to Marion County for arraignment May 28 but they then asked continuance for later arraignment. Polley participated in a motion filed June 4, 1942, for reconsideration of the *nolle prosequi* entered on the first indictment and a motion filed June 6 to quash the second indictment which was overruled June 11, when all appellants were arraigned thereon and pleaded not guilty. July 10, 1942, each appellant filed affidavit for change of venue which was perfected as above stated. In the next or September, 1942, term of the Boone Circuit

Court appellants filed a plea of double jeopardy to which the State demurred. The demurrer was argued November 20, and later sustained. The motion for discharge now under consideration was filed November 23, 1942, and the hearing thereon was held March 23, 1943, in the following term.

Mere recital of this sequence of events is sufficient to show that neither his statutory nor constitutional rights were invaded. A fugitive from justice may not invoke the aid either of the statute or the constitution. His presence is necessary at his trial. *Miles v. State* (1944), 222 Ind. 354, 53 N. E. (2d) 779. After his return to Indiana Polley by the activities of his attorney was principally responsible for the delay of which he complains. He testified only to the fact that he had never asked for a continuance but there was no showing that he ever asked for a trial. Orderly disposition of his persistent motions would not permit an early trial. The ruling as to him was not error.

One seeking the benefit of the statute must bring himself within its terms. *State v. Beckwith* (1944), 222 Ind. 618, 157 N. E. (2d) 193. This was not done by Chelf and Gordon. They have never been "detained in jail" on either indictment. When the first one was returned, and continuously thereafter except when temporarily brought into court for proceedings requiring their presence, they were confined in the Reformatory, and later the State Prison, serving a sentence of 10 to 25 years upon pleas of guilty to an affidavit charging robbery and grand larceny not committed in connection with the homicide. Our statute and the similar Ohio statute are not as broad as the acts of some other states where it has been held that "such statutes . . . constitute a legis-

lative construction or definition of the constitutional provision . . ." *State* v. *Keefe* (1908), 17 Wyo. 227, 98 P. 122, 22 L. R. A. (N. S.) 896, 17 Ann. Cas. 161; *Hollandsworth* v. *Godby* (1923), 93 W. Va. 543, 117 S. E. 369, 370; *Fulton* v. *State* (1929), 178 Ark. 841, 12 S. W. (2d) 777. In Wyoming and Arkansas the generic word "prison" is used where our legislature said "jail." "Prison includes every place of confinement under legal process or lawful arrest; but it is usually specifically applied to the place of confinement of convicted criminals, in the United States esp. a State Prison." Webster's New International Dictionary (2d Ed.) p. 1968. See also *Fulton* v. *State, supra.*

In *McGuire* v. *Wallace* (1886), 109 Ind. 284, 287, 10 N. E. 111, 112, it is stated that this section "was enacted in aid of section 12 of the Bill of Rights" and in *State* v. *Kuhn* (1900), 154 Ind. 450, 453, 57 N. E. 106, 107, that the statutory "provisions express the legislative judgment of what constitutes a reasonable time for the State's preparation for trial and mark(s) the limit of the State's right to hold a defendant without trial." The only other Indiana opinion we have found that is at all in point states, without citation of authority or assigning reasons, that confinement in jail in another county and thereafter in the State Prison on another charge "cannot be deemed a part of the period during which he was 'detained in jail, without a trial, on the indictment' returned in Owen County 'after his arrest and commitment thereon.'" *Palmer* v. *State* (1926), 198 Ind. 73, 152 N. E. 607. None of these cases is clearly decisive of the problem before us now.

In Ohio one, who is confined in a penitentiary for another crime, is held not to be within the provisions of

the statute. *Shafer* v. *State* (1932), 43 Oh. App. 493, 183 N. E. 774, *Brophy* v. *State* (1898), 8 Oh. S. & C. P. Dec. 698. The reason given in the latter, that the convict "was practically dead as a civilian and before he may make this demand he must serve his sentence," is known as the doctrine of *autrefois attaint* which has not been approved generally in the United States. *State* v. *Keefe, supra; Arrowsmith* v. *State* (1915), 131 Tenn. 480, 175 S. W. 545; *Ex Parte Tramner* (1912), 35 Nev. 56, 126 P. 337, 41 L. R. A. (N. S.) 1095. A better reason for the construction adopted by the Ohio courts and applicable here is that words in a statute should be taken in their common meaning. Horack's Sutherland Statutory Construction § 4919; *City of Columbus* v. *Rynerson* (1925), 195 Ind. 620, 148 N. E. 602. The legislature knew the difference between a jail and the State Prison, and doubtless the former word was used advisedly. The section we are considering is part of "An Act concerning public offenses," Acts 1905, p. 632 as amended in 1927, see Acts 1927, p. 418. This was a reenactment of § 207 of "an Act concerning proceedings in criminal cases," Acts 1881, pp. 114, 153. This Act and its companion "Act concerning public offenses and their punishment," Acts 1881, p. 174, contain many references both to "State Prison" and "jail." Of course there was no reference to the Indiana Reformatory for it was not then in existence. See § 13-401, Burns' 1942 Replacement, § 13597, Baldwin's 1934. When the section was framed the author was evidently not thinking in generic terms but of specific situations which is shown by the fact that a shorter time is fixed for detention in jail without trial than for delay in trying defendants held on recognizance. We may not by judicial legislation stretch the statute to make it coextensive with

the constitutional provision nor restrict the latter to conform with legislative thought on the subject. *In re Alpine* (1928), 203 Cal. 731, 265 P. 947, 58 A. L. R. 1500.

But it does not follow that the imprisonment of Chelf and Gordon in the Reformatory and State Prison deprives them of their constitutional right. The opposite view was expressly declared in *Shafer* v. *State, supra.* With little dissent it is generally held that a convict, like any other defendant, is entitled to a speedy trial under similar Bills of Rights. 22 C. J. S., *Criminal Law* § 467, p. 715, n. 50, which recites the adequate reasons given in *State* v. *Keefe, supra.* So we pass to the final question: Was there such unreasonable delay in administering justice as to entitle them to discharge?

The factual backgrounds for their claims are similar but not identical. Each was served with *capias* on the first indictment while he was in the Reformatory. The motion alleges and appellee's answer admits that they "were soon thereafter arraigned and pleaded 'Not Guilty.'" They were not again in court, so far as the record discloses, until about June 11, 1942, when they were arraigned and entered the same pleas to the second indictment. Neither by act nor word did either of them communicate to the court or the prosecuting attorney at any time a desire or demand for trial unless Chelf's first demand for discharge filed June 11, 1940, can be called such. A distinction between the two kinds of demands is recognized in *State ex rel. Anderson* v. *Callahan* (1922), 119 Wash. 535, 545, 206 P. 12. The record shows no steps taken to get action upon the motion and it was still pending when January 16, 1942, on the written motion of the prosecuting attorney the court entered an order of *nolle prosequi* as to Chelf, Gordon and Jackson on the first indictment. The next

event was the second indictment, identical with the first, returned April 19, 1942. Thereafter Chelf and Gordon were joined in the various motions in which, *supra,* we have said Polley participated. Whether this was done at the request of Chelf or Gordon, or with their knowledge, does not appear. Each disclaimed knowledge of entry of the *nolle prosequi,* but other questions put to them by the attorney in the hearing were not designed to elicit information except as to the erroneous theory he was pursuing that the *nolle* was an artifice to deny their statutory right to discharge.

In *State* v. *Beckwith, supra,* we quoted with approval *State* v. *Miller* (1913), 72 Wash. 154, 129 P. 1100, which held "that the constitutional right should be deemed waived by the failure to ask for a trial, the silent acquiescence in the delay, and the failure to claim the constitutional right until the cause had been definitely set for trial upon the request of the state, and then only by a motion to dismiss." This rule has been similarly stated in numerous cases. Among them are *People* v. *Foster* (1933), 261 Mich. 247, 252, 246 N. W. 60, 61, and the three Federal cases cited therein, *State ex rel. Davis* v. *Bayless, District Judge* (1927), 38 Okla. Cr. 129, 259 P. 606; *Raine* v. *State* (1920), 143 Tenn. 168, 181, 226 S. W. 189; *People* v. *Klinger* (1925), 319 Ill. 275, 149 N. E. 799, 42 A. L. R. 581; *State* v. *McTague* (1927), 173 Minn. 153, 216 N. W. 787. Usually the rule has been announced and applied in cases where the accused was not imprisoned and was represented by counsel. There is a suggestion in the text of 22 C. J. S. *Criminal Law* § 469, quoted in the Beckwith case, that it may not apply except "when accused has been admitted to bail, or is not within the custody of the court." See also *People* v. *Klinger, supra; Raine* v. *State, supra; Arrowsmith* v. *State, supra; Dudley*

v. *State* (1904), 55 W. Va. 472, 47 S. E. 285; *Shafer* v. *State, supra,* wherein it is said that the convict need not demand a trial. With this we do not agree.

To the contrary is *State* v. *McTague, supra,* where, with facts similar to those in the case at bar, the court said:

> "The constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' (no reference to counsel in this case) while the defendant and his counsel rest in silence. We hold that these solicitous privisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. They are a shield, and, as said in *State* v. *Rowley,* 198 Iowa 613, 198 N. W. 37, 199 N. W. 369, they 'must not be left hanging on the wall of the armory.' There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights as a foundation for his application for a dismissal. The right to a speedy trial is valuable, and it will be zealously guarded by the courts with resolute courage. It is for the protection of personal rights, not to embarrass the administration of the criminal law nor to defeat public justice. It is a privilege to the accused. If he does not claim it, he should not complain. It may be waived."

In the first motion for discharge, signed and sworn to only by Chelf's attorney, is the averment that "being without funds he was unable to employ any attorney." There may be question whether this was legitimate evidence of the fact though it was introduced without objection. It was not confirmed by Chelf who testified. Twice, being arraigned, he had opportunity to ask for the appointment of an attorney, and, as well, to ask

for an early trial. The fact that he was represented at the hearing and in the trial by his present attorney is some indication that when he so desired he could procure counsel. But assuming that he had neither money, nor relatives or friends interested in his defense, there was no reason shown why if he desired a trial he could not have used some means so to inform the court.

Jackson testified at the hearing in support of his own motion for discharge. Over the objection of the State's attorney the court permitted him to state that he had written a letter to the judge asking for trial. When the same attorney examined Chelf and Gordon he asked neither of them concerning their efforts, by letter or otherwise, to get an early trial. Two inferences may be drawn from this omission, either that the attorney was not interested in dismissal of the indictment as to Chelf and Gordon, or that he knew and feared the negative answer that each might make concerning an early trial. The court had a right to draw the latter inference, *Great American Tea Co.* v. *Van Buren* (1941), 218 Ind. 462, 467, 33 N. E. (2d) 580, and, in support of the ruling, we must assume that it was drawn.

The difference between the diligence required of an accused on bail and with counsel and that expected of him who is imprisoned and without an attorney seems to us to be merely one of degree. Some diligence is necessary; how much depends upon the circumstances. Those cases holding that a demand for trial made in open court or by motion is a condition precedent to the granting of a discharge would seem inapplicable to the situation of Chelf and Gordon. But if they wanted a trial they should have so informed

the court. From the flood of long hand letters and petitions addressed to this and other courts, not excluding the United States Supreme Court, by inmates of Indiana penal institutions, we may take judicial knowledge of the fact that this method, at least, was available to these appellants. There is no evidence of its use. By Chelf's first motion the court was not informed that he was demanding a trial. Otherwise throughout the entire period he and Gordon were silent. As stated in the Beckwith case a defendant may be content "to remain silent and inactive in the hope of better chances" resulting from delay. The constitution does not compel him to forego these chances. The right is for his benefit and therefore may be waived.

The judgment is affirmed as to all appellants.

Note.—Reported in 58 N. E. (2d) 353.