STATE OF CONNECTICUT *v.* PRESTON HOLLOWAY

BALDWIN, C. J., KING, MURPHY, MELLITZ and SHEA, Js.

Argued October 9—decided December 1, 1959

*James D. Cosgrove,* public defender, for the appellant (defendant).

*John D. LaBelle,* state's attorney, for the appellee (state).

MURPHY, J.  The defendant was convicted of violating the Uniform State Narcotic Drug Act in a trial to the jury and thereafter pleaded guilty to being a third offender under the act.  Rev. 1949, § 3962 (as amended, Rev. 1958, § 19-246); Cum. Sup. 1955, § 2104d (Rev. 1958, § 19-266).  He received a

mandatory sentence of imprisonment for life. Cum. Sup. 1955, § 2103d (as amended, Rev. 1958, § 19-265). His appeal is based upon a claim that he was denied a speedy trial, upon claimed error in two rulings on evidence, and upon claimed error in the charge to the jury and in the refusal to set aside the verdict.

On December 18, 1956, the defendant was indicted by a grand jury in a two-part indictment that charged him in Part A with possessing, having under his control, administering or dispensing narcotic drugs on or about July 7, 1956, at Hartford, and in Part B with being a third offender, if convicted under Part A, by reason of 1947 and 1952 narcotics convictions in New York. The defendant had been arraigned originally upon an information. It was superseded by the indictment, and the case was then reserved for the advice of this court. *State* v. *Holloway*, 144 Conn. 295, 130 A.2d 562. Our opinion was handed down on March 5, 1957. On May 15, 1957, a motion to dismiss the indictment was filed and denied. The defendant has assigned as error the denial of this motion. Two of the reasons upon which the motion was predicated have not been briefed and are considered as abandoned. *State* v. *Ferraiuolo*, 145 Conn. 458, 459, 144 A.2d 41. The remaining claim is that the defendant was denied a speedy trial contrary to article first, § 9, of the state constitution.

The chronology of events in this case shows that the defendant was arrested on July 7, 1956, and after three continuances in the Police Court of Hartford was, on September 5, bound over to the Superior Court. Rev. 1949, § 7737 (Rev. 1958, § 51-38); Nov. 1955 Sup., § N227 (Rev. 1958, § 51-180); Rev. 1949, § 8725 (as amended, Rev. 1958, § 54-2). The second of these continuances was at the request of

the private counsel who then represented the defendant, and the others were requested by the state. The record fails to indicate that the defendant opposed either of the continuances granted at the state's request or that he did not acquiesce in or consent to them. After the bind over, the defendant was presented for plea to the information on October 24, 1956, during the term to which he had been bound over. He pleaded not guilty and elected trial by a jury of twelve. On December 12, 1956, he was presented for trial. During the selection of the jury, the need for an indictment became apparent, and the court directed that a grand jury be summoned for December 18. After the indictment was returned, important legal questions raised by the defendant's counsel required determination by this court. The state and the defendant stipulated for a reservation of these questions, and we answered them on March 5, 1957. *State* v. *Holloway, supra.* On April 5, 1957, the defendant asked for time within which to obtain private counsel. His request was granted. On May 2, 1957, a hearing was held on his application for a writ of habeas corpus, a proceeding initiated by a letter of his to the presiding judge. The letter in effect embodied the reasons upon which the motion to dismiss the indictment was predicated. The application for the writ was denied. As heretofore indicated, the motion to dismiss the indictment was filed May 15, 1957.

Whether an accused has been denied his constitutional right to a speedy trial depends upon the facts in the particular case. The right may be waived where a defendant consents to delay or both prosecution and defense agree upon or stipulate for postponement. Waiver may be implied where the defendant, in court, interposes no objection to

a continuance. *People* v. *Prosser,* 309 N.Y. 353, 359, 130 N.E.2d 891, and cases annotated at 57 A.L.R.2d 321. On the basis of the lapse of time from the arrest on July 7, 1956, to the date of the motion to dismiss, there would appear to be undue delay in trying the defendant. When we consider, however, that some of the continuances in both the Police Court and the trial court were requested by the defendant and that he stipulated for the reservation to this court which entailed further delay, we fail to see that his constitutional right was violated.

Upon the trial, evidence was introduced from which the jury could find that the defendant had been in Hartford but a few days when, on July 7, 1956, two detectives of the Hartford police department stopped him on the street. He was searched in a hallway. Needle marks were found upon his arms. He had a sum of money, including three bills with torn edges. He admitted that he used narcotics and had had a "pop" that morning and the previous day. He accompanied the detectives to his room, which he unlocked and permitted them to search. On top of the stove, they found a charred bottle cap, a small knife, a number of burned matches, some stained tissue and a piece of cotton. In the drawer of a clothes closet, they found a can of milk sugar. The paper inner seal had a hole in it. The defendant denied ownership of all the articles found in the room but later admitted that he had bought the can of milk sugar. At police headquarters, he gave a sample of his urine to the detectives. Toxicological examination disclosed traces of morphine in the milk sugar, quinine in the bottle cap, and both morphine and quinine in the urine. Heroin and morphine are narcotics obtained from opium. The presence of morphine in the urine indicates that the person has

taken morphine or heroin. Heroin is converted to morphine in the human body. Ordinarily, morphine will not show in the urine later than ten to twelve hours after an injection. An injection into the arm by hypodermic needle is called a "pop" by narcotics users. The needle is customarily attached to an eye-dropper, and a snug fit is achieved by using the edges torn off paper currency. Milk sugar and quinine are used as fillers for the narcotic in pre-paring an injection.

Error is assigned in the refusal of the trial court to strike the testimony of Dr. Abraham Stolman, state toxicologist, that upon analysis morphine was found in the defendant's urine. The defendant claims that the state had failed to show that the bottle which contained the sample of urine was clean and uncontaminated before the defendant urinated into it. Dr. Stolman described the procedures in the state health department in which batches of specimen bottles are washed and sterilized un-der his direction. Each sterile bottle is capped with a metal screw cap and is placed in a card-board mailing container which is also capped with a metal screw cap. The bottles are then packed in cartons and shipped to police departments in the state. The bottle used by the defendant had been kept in the original carton in a cabinet in the office of a detective from the time of its receipt by the Hartford police until it was removed by the detec-tive for use by the defendant. Both screw caps were intact before it was used and were put back on after the specimen was obtained. The cardboard con-tainer was then sealed and delivered to Dr. Stolman. While Dr. Stolman could not testify from personal knowledge of the condition of the bottle at the time the specimen was taken, the court was not in error

in refusing to grant the motion to strike. From the evidence of the procedure used in the preparation and storage of the specimen bottles, the jury could determine as a factual matter whether the bottle was uncontaminated when put to use.

To impeach the credibility of the two detectives who testified for the state, the defendant made an offer of proof to show by cross-examination of them that they knew that if the defendant was convicted under Part A of the indictment he would be presented under Part B and if convicted under that part, had to be sentenced to life imprisonment as a third offender. The court sustained the state's objection to the offer and the defendant excepted to the ruling. It is impossible to follow the defendant's line of reasoning in relation to this offer. The defendant was not being tried by the jury under Part B. That would not come into operation unless he was found guilty of Part A. The jury did not and could not know of the existence of Part B. *State* v. *Holloway,* 144 Conn. 295, 302, 130 A.2d 562. The ruling of the court was correct.

At the conclusion of the court's charge to the jury, the defendant took exception to the portion in which the court discussed the evidential value of the alleged statement by the defendant that he had taken a "pop" that morning. The court instructed the jury that first they should decide whether he made the statement and secondly, if he did, what he meant by it. The court then said that if the jury found that the defendant meant by the statement that he had administered the "pop" to himself or to someone else, it would be a violation of the portion of the act relative to administering a narcotic drug and the defendant would be guilty as charged. The basis of the defendant's exception was that there was no

evidence to show either possession or use of a narcotic drug on the day of his apprehension by the police and that therefore the court in effect directed the jury to find him guilty.

Immediately prior to giving the portion of the charge to which exception was taken, the court instructed the jury in these words: "The State must prove the possession or the control or the administering or the dispensing of a narcotic. So, basically, as I said to you, as that term administer is used in the statute, it means to use, to give to oneself or to others a narcotic drug. So, if you find that the State has proved beyond a reasonable doubt first that there was a narcotic and second that it was used or administered by this defendant to himself or to any other person, you will find the defendant guilty as charged." Later the court told the jury that, standing alone, any one of the various items making up the state's case might not be, and in some instances could not be, sufficient for conviction. In this connection, the court stated that the result of the urine analysis in and of itself would not sustain a finding of guilt but that it was one piece of evidence to be considered along with the other evidence in the case in the determination of the guilt or innocence of the defendant. The exception was without merit.

Error is claimed in the refusal of the trial court to set aside the verdict as contrary to law and against the evidence. There was evidence that articles similar to some of those found in the defendant's room were commonly used by narcotics users in the preparation of drugs for injection and that torn edges of currency were used to make a tight fit between the eyedropper and the hypodermic needle. From this evidence, coupled with the other

facts heretofore detailed and the inference that could be drawn from the defendant's failure to testify, it cannot reasonably be said that the jury could not find the defendant guilty. *State* v. *Tucker,* 146 Conn. 410, 413, 151 A.2d 876.

There is no error.

In this opinion the other judges concurred.