STATE OF CONNECTICUT *v.* CHARLES J. SAUNDERS, JR.

APPELLATE DIVISION OF THE CIRCUIT COURT

FILE No. MV 1-19360

Argued June 3—decided July 24, 1963

*Milton Turkel,* of Stamford, for the appellant (defendant).

*Leo Kivell,* assistant prosecuting attorney, for the appellee (state).

JACOBS, J. Only two assignments of error need be considered on this appeal: first, whether the court erred "in refusing to grant unconditionally the [defendant's] motion to dismiss which was made on constitutional grounds," and second, whether the court erred "[i]n concluding upon all the evidence that the defendant was guilty beyond a reasonable doubt of the crime" of operating a motor vehicle while under the influence of intoxicating liquor. General Statutes § 14-227.

The motion to dismiss raises the constitutional question whether the defendant was denied the right to a speedy trial. "Under our constitution an accused is entitled to a speedy trial. Conn. Const.

art. I § 9. This means that the state must proceed with the prosecution without undue delay." *Wojculewicz* v. *Cummings,* 145 Conn. 11, 21. "Whether an accused has been denied his constitutional right to a speedy trial depends upon the facts in the particular case." *State* v. *Holloway,* 147 Conn. 22, 25. The constitution does not purport to fix a period of time within which a person charged with a crime shall be tried. It merely guarantees to the accused "a speedy, public trial." The inquiry, then, is a factual one. "The right of a speedy trial is necessarily relative. It is consistent with delays and depends upon circumstances. It secures rights to a defendant. It does not preclude the rights of public justice." *Beavers* v. *Haubert,* 198 U.S. 77, 87. "Time, only, will not always suffice as the sole basis for the determination of this question, but time, together with surrounding circumstances, avoids an arbitrary standard and yet effectively preserves the safeguards created by the constitution."[1] *People* v. *Romero,* 13 Cal. App. 2d 667, 672. In the determination whether there has been such undue delay as to infringe the constitutional provision, the proceedings must be viewed as a totality.

---

[1] Under a constitutional provision for speedy trial, no time lapse per se is undue. See *State* v. *Holloway,* 147 Conn. 22 (time lapse of over ten months from date of arrest to filing of motion for dismissal held not unreasonable on all the facts); *Nelson* v. *Sacks,* 290 F.2d 604 (three months' interval between arrest and trial held not unreasonable and no denial of speedy trial); *United States* v. *Farley,* 292 F.2d 789 (defendant was arrested on December 2, 1955; trial did not begin until May 7, 1956; no unreasonable delay under the circumstances shown); *State* v. *Hale,* 157 Me. 361 (defendant arrested April 23, 1960; his trial began June 6, 1960; he "received a 'speedy trial' after his arrest"); *People ex rel. DiLapo* v. *Tutuska,* 27 Misc. 2d 544, 547 (N.Y.) ("a delay of several months is not of itself an undue delay and . . . petitioner's right to a speedy and fair trial . . . has not been violated"); *State* v. *Vukich,* 158 Wash. 362 (information filed on June 7, 1929; no further proceedings were taken for more than sixty days thereafter; *held* that the constitutional guarantee of a speedy trial was not infringed by such a delay).

The chronology of events in this case so far as we can determine them from the record shows that the defendant was given a uniform traffic ticket on the evening of February 9, 1963. He was required to appear before the Circuit Court on February 25, 1963. He appeared on that date and pleaded not guilty. Trial was set down at Norwalk for March 8. The defendant and his expert witness appeared on March 8 and were ready to proceed to trial. Due, however, to the unavailability of Dr. Abraham Stolman, state toxicologist, the state moved for a continuance. The defendant resisted the postponement. The court continued the case subject to the availability of the experts for both sides. On March 19, 1963, the defendant moved to dismiss on the ground that he was deprived of his right to a speedy trial. The motion was heard on March 26. The court *(George, J.)* granted the motion "unless heard within 14 days." Trial was commenced on April 8, 1963, and concluded on April 11, 1963. At all times the defendant was free on bail. Thus the defendant was brought to trial, convicted and sentenced within sixty-one days after he was given a uniform traffic ticket. The defendant condemns the delay as violative of his right to a speedy trial. We take a different view.

The ruling granting the motion to dismiss "unless heard within 14 days" was proper. "A motion for dismissal may be granted contingent on the trial not being commenced by a certain date, or an order denying a motion for discharge may fix a time for trial and provide for a discharge if through delay on the part of the state accused is not then tried." 22A C.J.S. 44, Criminal Law, § 470 (a). No claim is made of any negligence or wilfuness of the prosecutor in bringing on this case for trial. Delay was occasioned by the unavailability of an important state's witness. "[P]articular causes of delay which

do not violate accused's rights include . . . the temporary absence or unavailability of necessary witnesses, or inability to procure witnesses in time, due diligence being shown." Id. § 472(2), pp. 56, 57 & n.60.5 and cases cited. "[T]he constitutional right is not violated by granting one continuance, on the motion of the state's attorney, on the ground of the absence of material witnesses." 14 Am. Jur. 861, Criminal Law, § 136 & n.20; see *State* v. *Pratt*, 20 S.D. 440; *People* v. *Quijada*, 154 Cal. 243; note, 30 A.L.R.2d 462, 464.

So important a matter as dismissing a complaint or information because of undue delay in bringing the case on for trial calls for the exercise of extreme caution. It necessitates a decision consonant with competing rights of equal importance. Concededly, the defendant's right to a speedy trial is not absolute and unyielding, regardless of the circumstances of the delay. The state's right to effective enforcement of the criminal law requires that allowance be made for a reasonable accommodation to the pressures and needs of those charged with administering the law. Under the circumstances presented in the case at bar, it cannot be said that the defendant did not receive a speedy trial within the meaning of the constitution.

The evidence discloses: On February 9, 1963, shortly after 8 p.m., the defendant was operating his 1953 Mercury sedan in a northerly direction on Fairfield Avenue in the city of Norwalk. Just north of the intersection of Fairfield Avenue and Cedar Street, he struck a car which was parked on the easterly side of Fairfield Avenue. He proceeded along for a considerable distance before his vehicle was stopped. The crash was heard by James Salzano, a state trooper who was stationed in his cruiser facing east on the ramp leading to Fairfield

Avenue on the Connecticut Turnpike. He caught up with the Mercury sedan about 600 feet north of the crash. Shortly after the collision, Captain James P. Tallon and Sergeant Thomas L. Hart, both of the Norwalk police department, appeared on the scene. According to the testimony of the city police officers, the defendant's breath smelled of alcohol, his speech was slurred and he was unsteady while walking. At about 8:35 p.m., at police headquarters in Norwalk, the defendant voluntarily submitted to an intoximeter test, a device used to test the alcohol content of a subject's breath. Dr. Stolman testified that the test given the defendant disclosed that he had a concentration of alcohol in the blood of .23 of one percent, by weight, and that in the doctor's opinion the defendant was under the influence of liquor at the time of the arrest. The Norwalk police officers gave similar opinions.

Dr. Leon Greenberg, formerly a professor of physiology at Yale University and presently a member of the faculty of Rutgers University, called as an expert witness by the defendant, testified, in substance, that the breath test, as applied to the defendant, was unreliable because, due to a number of physiological variables, two samples of alveolar air should be taken from the subject. "There is one way in which the liability of such error can be enormously diminished, and that is to perform two tests, which would check, in those suspects where prosecution is anticipated." Greenberg, "Physiological Factors Affecting Breath Samples," 5 Trial Lawyers Guide, pp. 107, 129. Both experts agreed that determination of the alcohol content of alveolar air as an index of intoxication is now widely employed. See comment, 30 N.C.L. Rev. 302, 303, n.9, and cases cited; note, 159 A.L.R. 209; Uniform Chemical Test for Intoxication Act § 1, 9 U.L.A. (Sup. 1962). But even assuming that the percentage

of carbon dioxide in the alveolar air may vary and is influenced by a variety of conditions, such as food in the stomach, posture, activity, etc., the margin of error would be about 15 percent, which in turn would reduce the alcohol concentration in the blood to about .19 of one percent.

"Settled medical opinion apparently is that any person is unfit to drive when his blood alcohol concentration is at or in excess of fifteen hundredths of one per cent." *State* v. *Hunter,* 4 N.J. Super. 531, 534; Uniform Chemical Test for Intoxication Act § 7, 9 U.L.A. (Sup. 1962); see Proc. of House of Delegates, Am. Med. Assn., June 8-12, 1944. "The standards of the American Medical Association fulfill adequately the purpose they were designed to serve, namely, to provide a scientific yardstick of reasonable accuracy for evaluating the condition of a person accused of driving a motor vehicle while 'under the influence of intoxicating liquor.' They are also practical and fair, even generous." Letourneau, "Chemical Tests in Alcoholic Intoxication," 28 Can. B. Rev. 858, 864; see commissioners' prefatory note, Uniform Chemical Test for Intoxication Act.

The defendant denied his intoxication. He testified, however, that during the afternoon of February 9 he "had three shots of whiskey and three chasers of beer," and that at about 6:30 p.m. on that day he visited a bar, where he had another "whiskey and chaser of beer." The court could have considered the events leading up to and following the crash, the amount of alcohol consumed by the defendant prior to the collision, and the observations and opinions of the city police officers. These factors, when taken together with the intoximeter reading, justified the court in resolving the disputed issue of the defendant's intoxication against him.

We think that upon all the evidence, including the inferences which the court was warranted in drawing, it was justified in concluding that the defendant was guilty of the offense charged beyond a reasonable doubt.

There is no error.

In this opinion PRUYN and KINMONTH, Js., concurred.