202 So.2d 88

**Joseph Earl AUTREY**

v.

**STATE.**

**I Div. 220.**

Court of Appeals of Alabama.

June 27, 1967.

Concurring Opinion June 30, 1967.

Rehearing Denied Aug. 29, 1967.

54

Joseph Earl Autrey, pro se.

MacDonald Gallion, Atty. Gen., and Lloyd G. Hart, Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was put in the Mobile County jail on December 10, 1964, on a complaint made by his wife on November 26, 1964, for offenses alleged to have been committed by him against two of his daughters on August 7, 1964, at about 6:30 P.M.

On May 12, 1965, the Grand Jury of Mobile County, Alabama, indicted appellant charging that he "did carnally know, or abuse in the attempt to carnally know Linda Sue Autrey, a girl under the age of twelve years, against the peace and dignity of the State of Alabama".

On May 26, 1965, appellant, accompanied by his court-appointed attorney, appeared before the court and waived arraignment, entering a plea of not guilty and the case was set for trial on June 16, 1965. On December 9, 1966, the court again set the date for trial at January 10, 1967, after which appellant filed a motion to abate and dismiss the indictment because of his denial of a speedy trial in that he had been held in jail for twenty-four months. This motion was denied by the court.

On January 10, 1967, appellant was tried by a jury, found guilty as charged, and sentenced to a term of ten years in the State penitentiary.

Appellant's wife, Rosie Autrey, declined to testify against her husband.

Appellant's fourteen year old daughter, Linda Sue Autrey, testified that on August 7, 1964, at approximately 6:30 P.M. (at which time she was twelve years of age) she and her ten year old sister, Gloria, were in bed; that her father came into the bedroom, "took his clothes off and got in bed with us"; that "his body was completely exposed"; that he "pulled my panties off", "got on top of me and started going up and down"; and that he "placed his private parts in my private parts". She stated that this had happened twice previously. The witness stated that her father then got on top of her sister and repeated the performance.

Gloria Jean Autrey testified substantially the same as her sister. She stated that

her father had been drinking on the night in question, that she saw him perform the act with her sister, and that afterwards he repeated the act with her.

Four of the appellant's sons testified that the appellant was a good father, lived a good life, and had taught them to be good and obedient.

Twelve witnesses testified that appellant's reputation for truth and veracity in the community was good.

Appellant then took the stand in his own behalf and denied the charges against him. He stated that he had had trouble with his oldest daughter, Lottie; that just prior to the alleged offense, Lottie, accompanied by Gloria, had taken his car without his permission; that he had later had to call the police to pick them up; and that Lottie and Gloria had both been placed in the juvenile detention home. He testified that shortly after they were placed in the detention home, this complaint was filed against him; that he did not know how the August 7 date was chosen by the State's witnesses as the date of the alleged incident. He further testified that Gloria was slightly retarded.

This court, by Tit. 15, Sec. 389, Code of Ala., 1940, will consider all elements of the case in question, whether or not error has been assigned. Appellant, perfecting his own appeal, has also specifically assigned as error eleven questions for this court to consider. We find no merit in appellant's claims of error Nos. 2–5 and 8–11.

Appellant contends by his claim of error No. 7 that "the trial court erred when it refused to issue a subpoena for Dr. C. H. Ross, the doctor who allegedly examined the complainant in December, 1964." The record reveals the following regarding this contention:

"MR. MERIWETHER: * * * According to the Court's instructions I have endeavored to call Dr. Ross and I have contacted his office; Dr. Ross is report-

edly in bed at this time, he is a man of substantial years and he does not come into his office until about four o'clock in the evening. The lady that I contacted states that there's no record in the office of this case whatsoever, but she says that she feels the doctor would remember the occasion himself. I have asked that the doctor come down if he can—if he's able to come down; however, I would insist upon the issuance of a subpoena at this time.

"THE COURT: All right. I think the Court's going to decline to issue an instanter subpoena which would mean that a deputy sheriff would be ordered to pick Dr. Ross up and bring him in immediately, in view of the fact that Dr. Ross—I believe you stated to me a little while ago that Dr. Ross was some seventy-five years old. The State did not mention his name in the direct examination. As I recall, the evidence was that some doctor examined this girl in December for something which is alleged to have happened in August. If Dr. Ross' secretary has stated to you that he might know something about, but that they have no record; and if she has said that if he's physically able that he will call the Clerk and make himself available, the Court feels that the evil of having a sheriff pick up that doctor and bring him into Court, not knowing what he will or will not know, outweighs the good; and I decline the motion.

"MR. MERIWETHER: We except, your Honor."

■ Compulsory attendance of this witness rested fully within the discretion of the trial judge. It is not shown that this doctor possessed any evidence beneficial to appellant, and in the absence of such showing, we hold that the trial judge did not abuse his discretion in his failure to compel attendance of this doctor.

Appellant further contends that there was insufficient evidence to sustain conviction.

**56**

However, after reading the evidence presented by the State, we are of the conclusion that the evidence presented a fact for the jury to decide as to appellant's guilt.

Appellant also contends as claim of error No. 1 that it was error for the trial court to not provide him with a special venire and that he had not waived his right to same.

Tit. 30, Sec. 63, Code of Alabama, 1940, requires a special venire for all capital cases. To waive this special venire, appellant must do so in writing.

Tit. 15, Sec. 380, Code of Alabama, 1940, states in part as follows concerning what a transcript must *not* contain:

> "Such transcript must not contain * * * the venire for any grand or petit jury, nor the organization of regular juries for the week or time at which the case was tried, nor the order of the court for a special venire * * *; but, in the absence of any such question, such proceedings are, upon appeal, presumed to have been regular and legal."

The record of the trial complies with this code provision and does not show anything concerning a special venire. However, the record also does not disclose any objection or outcry during the course of the trial because of a lack of a special venire.

The case of Davis v. State, 259 Ala. 212, 66 So.2d 714, states in part as follows:

> "Under the law as now set up the failure to comply with any of those provisions required to be omitted from the transcript [as by Tit. 15, Sec. 380, supra] amounts to a waiver and *is not available on appeal*." (Emphasis ours)

See also Seals v. State, 271 Ala. 142, 122 So. 2d 513.

Since the record relates no objection on the question of a special venire in the trial court, appellant may not now raise it on appeal.

One major question must, however, be considered by this court, and that is the time lapse between the arraignment of appellant, at which his trial was first set, and the second setting of his trial, a lapse of some nineteen months, unexplained by the record.

Looking at this lapse most strongly in favor of appellant, as mentioned by his Motion to Abate and Dismiss Indictment and Prosecution, the question is then raised as to whether or not the constitutional rights to a speedy trial owed appellant have been violated.

The Constitution of Alabama, 1901, Art. 1, Sec. 6, states in part as follows:

> " * * * and, in all prosecutions by indictment, a speedy, public trial, by an impartial jury of the county or district in which the offense was committed * * *."

On its face, it therefore appears that this total elapsed time of over twenty-four months from arrest to trial had violated appellant's right. However, the case of Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158, states as follows:

> "[T]he majority view is that a demand for a trial or objection to the postponement of the trial, or some other effort to secure a speedy trial on the part of the accused, ordinarily must be affirmatively shown to entitle him to a discharge on the ground of delay. Frankel v. Woodrough, supra [8 Cir., 7 F.2d 796]; Phillips v. United States, 8 Cir., 201 F. 259, 262; Worthington v. United States, 7 Cir., 1 F.2d 154."

The United States Circuit Court of Appeals also stated in Worthington v. United States, 7 Cir., 1 F.2d 154:

> "The principal assignment of error is the ruling of the court in refusing to dismiss the defendants upon their plea, and sustaining plaintiff's demurrer thereto. The record fails to show a single effort made by defendant, or any other defend-

ant, to avail himself of a speedy trial. No facts were pleaded bringing the case within the rule requiring a speedy trial; i. e., that the defendant was incarcerated, or, being enlarged, had appeared in open court demanding trial, or otherwise. Defendant's sole reliance was upon the bare fact that the case had not been prosecuted. If the defendant desired a speedy trial, it was his duty to ask for it, and we must assume that it would have been granted, had he made any effort to procure it. His long and uninterrupted acquiescence in the delay bars his right to complain. Phillips v. United States, 8 Cir., 201 Fed. 262, 120 C.C.A. 149."

See also United States v. Research Foundation, Inc., D.C.N.Y., 155 F.Supp. 650; United States v. Monarch Radio & Television Corp., D.C.N.Y., 162 F.Supp. 910; State v. Banks, 111 La. 22, 35 So. 370; State ex rel. Underwood v. Brown, 193 Tenn. 113, 244 S.W.2d 168; Williams v. State, 210 Ark. 402, 196 S.W.2d 489; Loy v. Grayson, Fla., 99 So.2d 555; State v. Sawyer, 266 Wis. 494, 63 N.W.2d 749, cert. den. Sawyer v. State of Wisconsin, 348 U.S. 855, 75 S.Ct. 80, 99 L.Ed. 674; People v. Duncan, 373 Mich. 650, 130 N.W.2d 385; State v. Holloway, 147 Conn. 22, 156 A.2d 466, and State v. Thompson, 38 Wash.2d 774, 232 P.2d 87.

The case of Hernandez v. State, 40 Ariz. 200, 11 P.2d 356, aptly states as follows:

"The constitutional and statutory provisions involved herein were not meant to shield the guilty man who sits silently by and allows the officers of the state to assume that he acquiesces in delaying a trial, and then, when it is too late for the mistake to be remedied, claims his rights. They were meant rather to protect the man who seasonably makes it known to the proper officers that he claims an early trial, so that his innocence may be established."

The rights of appellant were in no way curtailed by the fact that he was in jail during these months of delay. For though he was incarcerated, he still had the ability and the means of bringing to the attention of the court his demand for a speedy trial.

In Goss v. State, Alaska, 390 P.2d 220, cert. den. 379 U.S. 359, 85 S.Ct. 118, 13 L.Ed.2d 62, the court states in part the following:

"The foregoing facts in no way suggest that appellant because of imprisonment, ignorance, or lack of legal assistance was not in a position to claim his constitutional right to a speedy trial. We conclude that he waived the right by failing to assert it promptly."

See also Chelf v. State, 223 Ind. 70, 58 N.E.2d 353.

■ This right to a speedy trial is a constitutional "right", but in order to obtain the benefit of it, it must be affirmatively exercised. This right is like unto a switch which must be "thrown" by that person who wishes to avail himself thereof before a claim of injury may be raised.

The complaint against appellant was made on November 26, 1964; he was arrested on December 10, 1964, and obviously indicted in the normal course on May 12, 1965. Counsel was appointed by the court for appellant on May 18, 1965, and appellant appeared in court with his counsel on May 26, 1965, to waive arraignment, plead not guilty, and hear his trial set for June 16, 1965. Since no bail was available to appellant, he was in jail for the ensuing nineteen months, until December 9, 1966, at which time his trial was set for January 10, 1967. During this entire period of time, according to the record, appellant, in person or through his attorney, made no outcry and made no attempt to obtain a speedy trial. From an observation of the record, this court does not know but what appellant was glad to be ignored by the prosecution. Duncan v. State, 42 Ala.App. 111, 154 So.2d 302, affd. 42 Ala.App. 509, 169 So.2d 439.

Because of appellant's apparent failure to attempt in any way to procure a speedy trial, he cannot at this time claim that he was denied such, his acquiescence being construed as a waiver of such right.

The judgment in this cause is, therefore, due to be and the same is hereby

Affirmed.

CATES, J., dissents.

CATES, Judge (dissenting).

In all trials it is the plaintiff who seeks redress.

Indictments are presumed by law to be laid against innocent men.

Here we are not dealing with a convict serving time on another sentence. Rather, Autry was twenty-four months in the county jail waiting to face a petty jury.

## I.

Alabama no longer has a commission of jail delivery. The only proximate command is in the precatory language of the last clause of Code 1940, T. 13, § 38, which reads:

"The chief justice shall * * * take care that prisoners are not allowed to remain in the jails without a prompt trial."

Whether or not pleas for prompt trial should be addressed in care of the chief justice or to the presiding circuit judge, I am not informed. In view of such a vague departure from the common law without any other compensating ameliorative statute, the moving burden should be on the State.

I think that the Court of Appeals of New York is correct in holding that the prosecution bears the initiative in bringing a prisoner to trial speedily. People v. Prosser, 309 N.Y. 353, 130 N.E.2d 891, 57 A.L.R.2d 295. See also N.Y. Code Cr. Proc. § 668.

After *Prosser,* the New York Legislature set up a detailed procedure under which a prisoner can demand trial which must be had within 180 days after demand. Code Cr.Proc. § 669–a. Subdivision 2 provides that after request the action is due to be dismissed with prejudice if not tried in the 180 day period.

My attention has not been called to any extant Alabama statutes as to speedy trial after indictment. Hence, under traditional principles, a court should look to the Constitution and its common law background.

At common law it was early established that trial of a felony must be had as early as the second term of court after initial commitment. This right was made specifically enforceable by the Habeas Corpus Act. Cooley's Constl.Lim. (8th Ed.) 646, fn. 5 and 717. Jenks, The Story of the Habeas Corpus, 18 L.Q.R. 64.

Like New York, Alabama no longer allows this matter, post-conviction, to be raised by habeas corpus. People ex rel. Lee v. Jackson, 285 App.Div. 33, 135 N.Y. S.2d 345 (hn. 4).

It follows, therefore, that the motion to abate was the only remedy available to the accused. The trial judge should have treated it as calling for the State to show cause why the indictment should not have been dismissed. See Klopfer v. State of North Carolina, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1.

## II.

Even were we to accept the so-called majority rule, yet thereunder a hearing on the motion to abate seems to me to be a necessity because of the many exceptions to that implied waiver doctrine. See Waterman, J., in United States v. Lustman, 2 Cir., 258 F.2d 475, 478.

## III.

A speedy trial is a right under § 13 of our State Constitution. Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158. This guaranty is now buttressed by the Fourteenth Amendment. Klopfer v. State of North Carolina, supra, has engrafted the Sixth Amendment's "right to a speedy * * * trial" upon State rules of due process.

Here the defendant "no matter how charged with punishment the scroll" is still due to be accused and convicted under, and only under, a constitution.

That appellant was in jail for twenty-four months before trial, I think, requires prima facie that the State explain to the circuit court. An indictment is a *returnable* paper, not a bill of attainder. It is *presumed* to have been laid against an innocent man.

Either the Sheriff or the District Attorney (or perhaps both) should exhibit all the prisoners in the county jail at the beginning of every session of the circuit court for criminal causes. This to me is the clear implication of § 144 of our Constitution.

## IV.

The second fact, i. e., that defendant was given a court appointed lawyer, raises a more difficult question. Can the assistance of counsel be used to construct a syllogistic waiver of the right to a speedy trial?

Court appointed counsel for indigent defendants work for statutorily limited fees. Code 1940, T. 15, § 318, as amended, sets a minimum of $50.00 and a maximum of $100.00 for trial counsel in capital cases. In other trials § 3 of Act 526, September 16, 1963, limits the fee to $100.00.

These fees are bare "dock fees," but the traditional "peppercorn" that binds a contractual tie. The legal profession is a calling and a client cannot be lightly declined. Posey & Tompkins v. Mobile County, 50 Ala. 6; 7 Am.Jur.2d, Attorneys at Law, § 3.

The secretary of our own State Bar Association has called the attention of the profession to the fact that executive action has been taken to prorate these statutory fees. Alabama State Bar Foundation Bulletin, Vol. V, No. 2, March, 1967. This article concludes:

"* * * The amount available is still woefully inadequate to provide reasonable compensation for the heavy burden that has been placed on the bar in such representation. We hope there is a growing realization that the burden of providing counsel is on the state rather than on the bar. All indications are that the federal courts will expand the requirement as to entitlement of counsel in criminal proceedings and it would be less than realistic to anticipate that the calls on the Bar in this regard will become less. We all should probably be more vocal on this subject so that the public will be aware of this problem. As long as we are content to suffer in silence, others will be content to see us do so. How true it is that the squeaking wheel gets the grease."

The Kentucky Court of Appeals reluctantly followed the Ninth Circuit case, United States v. Dillon, 346 F.2d 633. Warner v. Commonwealth, Ky., 400 S.W.2d 209, states in part:

"In recent times a rapidly progressive broadening of views of the courts as to the stages at which indigents accused of crime (or even convicted of crime) are entitled to representation by counsel has resulted in a great increase in the amount of time and effort required to be devoted by the legal profession to this service. The demands of this service are reaching such proportions that the rendering of the service threatens to become a major function of the practice of law instead of a merely collateral responsibility of the office of attorney * * *"

To me it is unrealistic to ascribe the inaction of demanding a trial to the defendant's lawyer. Moreover, if a lawyer must, as he does in Federal court, shower the court im-

mediately on appointment with written motions so as to protect the record, then conversely the failure so to do is left-handedly branded as inadequacy of counsel.

My diatribe on niggardly fees for court appointed counsel is given to show that the work of lawyers in criminal cases ought not to be scattered piecemeal[1] but rather in the interests of judicial economy and efficiency be compressed into a single day in court. We cannot ignore the temptation for overtaxed lawyers [2] to advise indigents to plead guilty.

Arraigning a prisoner under the speediest of trial judges, cannot involve less than an hour's time away from his office for counsel. An underpaid lawyer is only compensated by his oath.

The economics of practise at the *forma pauperis* bar [3] has been virtually disregarded by the intricate and onerous red tape laid down by the majority opinion in Anders v. State of California (May 8, 1967), 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493, from which I quote in part:

"* * * if counsel [appointed to handle a poor prisoner's appeal] finds his case to be wholly frivolous, after a conscientious examination of it, he should so advise the court and request permission to withdraw. That request must, however, be accompanied by a brief referring to anything in the record that might arguably support the appeal. A copy of counsel's brief should be furnished the indigent and time allowed him to raise any points that he chooses; the court—not counsel—then proceeds, after a full examination of all the proceedings, to decide whether the case is wholly frivolous. If it so finds it may grant counsel's request to withdraw and dismiss the appeal insofar as federal requirements are concerned, or proceed to a decision on the merits, if the state law so requires. On the other hand, if it finds any of the legal points arguable on their merits (and therefore not frivolous) it must, prior to decision, afford the indigent the assistance of counsel to argue the appeal.

"This requirement would not force appointed counsel to brief his case against his client but would merely afford the latter that advocacy which a nonindigent defendant is able to obtain. It would also induce the court to pursue all the more vigorously its own review because of the ready references not only to the record, but also to the legal authorities as furnished it by counsel. The no-merit letter, on the other hand, affords neither the client nor the court any aid. The former must shift entirely for himself while the court has only the cold record which it must review without the help of an advocate. Moreover, such handling would tend to protect counsel from the constantly increasing charge that he was ineffective and had not handled the case with that diligence to which an indigent defendant is entitled. This procedure will assure penniless defendants the same rights and opportunities on appeal—as nearly as is practicable—as are enjoyed by those persons who are in a similar situation but who are able to afford the retention of private counsel."

Similarly here the majority opinion puts the burden on the court appointed counsel

1. See Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178 June 12, 1967 (lawyer at line up).

2. A 1960 publication of the Mississippi Bar shows minimum fees in trials in that state's circuit courts of $250.00 for felonies and $750.00 for capital cases. The Huntsville-Madison County (Alabama) Bar in 1960 adopted minimum fees of: $250.00 for capital felonies; $200.00 for murder in the second degree; $150.00 for manslaughter; and $100.00 for other felonies.

Opinion 302 of the Ethics Committee of the ABA alludes to a lawyer's habitual charging of fees less than those established by a minimum fee schedule possibly affording evidence of unethical conduct.

3. See dissent in Anders v. State of California, supra.

of complying literally with Code 1940, T. 15, § 279. This does not comport with Ex parte State, ex rel. Lawson, 237 Ala. 591, 188 So. 242.

Hence, I consider the trial court should have taken testimony to ascertain whether or not the defendant was free from fault in causing the long delay between his commitment and trial.

There may be some valid reason: it should appear of record.

CATES, Judge (concurring in affirmance).

After the majority and dissenting opinions were filed, a suggestion was made by the Attorney General that shortly after arraignment the trial court committed Autrey to Bryce's Hospital for observation.

Not until September, 1966, did the hospital superintendent certify him back to the circuit court. These matters were omitted from the appellate record.

The trial judge was entitled to take judicial notice of the records of his court in denying Autrey's motion to abate. Freeland v. State, 43 Ala.App. 406, 191 So.2d 245. His reason for denial was valid. I am glad to have it recorded.

The Seventh Circuit opinion, Worthington v. United States, 1 F.2d 154, quoted from in the majority opinion, has been last cited by that Court of Appeals in United States v. Ettelt, 7 Cir., 334 F.2d 813. There the prisoner had no power to come to court. That principle, I think, controls where he is mentally unfit to stand trial. Conviction of a lunatic is a nullity. iv Bl. Com. 24; Yates v. Wainwright (Fla.), 151 So.2d 832; Ex parte Lee, 248 Ala. 246, 27 So.2d 147; Code 1940, T. 15, § 428.

Moreover, on the basis of this suggestion, I infer that appointed counsel was importuned by his client.[4] His decision to

submit the client's request to the trial judge was the correct choice. He is to be commended.

Accordingly, I herewith modify my former opinion so as no longer to show a dissent. I now vote to affirm the judgment of conviction.

---

**4.** This is borne out by Autrey's brief wherein he made here no claim of error because of the ruling below. [Autry in open court moved to perfect his appeal *pro se*.]