208 So.2d 232

**Richard Leon ETHERIDGE**

v.

**STATE.**

**I Div. 232.**

Court of Appeals of Alabama.
March 12, 1968.

Hayden Rector, Mobile, for appellant.

MacDonald Gallion, Atty. Gen., and John A. Lockett, Jr., Asst. Atty. Gen., for the State.

JOHNSON, Judge.

Appellant was indicted by the Grand Jury of Mobile County, Alabama, for robbery. Represented by counsel, he entered a plea of not guilty. After receiving a trial by jury, appellant was found guilty and sentenced to a term of fifteen years in the penitentiary. Hence, this appeal.

Harold Talbot testified that on January 3, 1965, he was working "behind the counter" at the Hamilton Gentry Pic-Quic Store on Cottage Hill and Azalea Road; that at "approximately five after ten or ten after ten" a man came up behind him and said, "Turn around and get a bag;" that he (Talbot) "turned around and looked into his face and at the same moment I looked at him and I heard something click and he had cocked a pistol of some description."

The witness further testified that he emptied the currency contained in two cash registers into a brown paper sack and gave it to the man who then "darted" out of the store. Talbot, in describing the man who robbed him, said, "He had a lot of bumps on him, he had sharp features, sharp nose, and he had a black small rim hat that could have been a little small, because there was a lot of hairline, and there was silver paint or spray or cream in the edge of his hair."

Several hours after the alleged robbery, Talbot said that he went to the city jail where he was shown a line-up of "six or seven" men through a two-way mirror and that he there identified appellant as being the man who robbed him earlier that evening. Talbot stated that no one prompted him in any way in making the selection from the line-up.

Robert E. Nelson, policeman for the City of Mobile, testified that on the night of the alleged robbery he was on duty in a patrol car; that he heard a report over the car radio about a robbery and also heard the description of the person involved; and that the description was similar to that of appellant whom he had arrested two and a half days before for carrying a concealed weapon. Nelson also testified that he and his partner went to appellant's home where they were admitted by Mr. Vernon Cooper; that appellant was in the bathroom at the time; that he asked appellant to come out, which he did after approximately five minutes; that appellant had some coloring in his hair which "was kind of flakey silverish-looking * * * and it was kind of stiff;" and that he (the witness) then called for Detective Snipes who came to the Cooper home.

Detective Charles A. Snipes, of the Mobile Police Department, testified that he went to appellant's home and that Officers Hines and Nelson were there. He stated that in "looking over" appellant's room, he saw a black hat resembling a derby hat which he took in to the police station. Snipes stated that after taking appellant to the city jail and after appellant had been identified by Talbot as the man who robbed him, he had appellant rub his head with a coarse brown paper towel. On re-direct, Snipes testified in part as follows:

"Q. How much later was it that the house was searched, Mr. Snipes?

"A. About 3:00 A.M.

"Q. About 3:00 A.M.?

"A. Yes, sir.

"Q. When were you there on the first occasion?

"A. About eleven o'clock.

"Q. Were there other people in the house there?

"A. Mr. and Mrs. Cooper.

"Q. And it was 3:00 A.M. when you went back and searched the house?

"A. Yes, sir."

Snipes stated that nothing was found as a result of the search.

Nelson E. Grubb, State Toxicologist and Criminologist, testified that he examined a hat and a paper towel which Detective Snipes had given him and that he had found some shiney particles in the hat which he identified as aluminum and that he found similar particles of aluminum in the paper towel.

In Wilson v. State, 43 Ala.App. 596, 197 So.2d 283, this court stated in part as follows:

"The law is well settled that to be admissible at trial, evidence seized without a search warrant must be the product of a search incident to a lawful arrest."

Detective Snipes on direct examination testified in part as follows:

"Q. Did you make any search of the premises inside or out?

"A. We looked over Mr. Etheridge's room in the house.

"Q. Did you see anything in his room unusual?

* * * * * *

"Q. You say you saw a hat, a coat and pants?

"A. Yes, sir.

"Q. Did the hat—describe the hat that you saw there.

"A. It was a small brim black hat resembling a derby hat.

"Q. Did you examine it?

"A. Yes, sir.

"Q. Did it have an peculiarities inside or out?

"A. It had small white specks on the sweat band inside."

■ We are of the opinion that the search which took place at the time of ap-

pellant's arrest was at most a cursory one which was incidental to the arrest. Therefore, there was no error in introducing into evidence the testimony pertaining to the hat found at that time. See Duncan v. State, 278 Ala. 145, 176 So.2d 840; Chapman v. State, Fla.App., 1964, 158 So.2d 578 and Wilson v. State, supra.

■ Testimony relating to the paper towel with which appellant rubbed his head at the direction of Detective Snipes was properly admitted into evidence.

In Schmerber v. State of California, 384 U.S. 757, 86 S.Ct. 1826, 16 L.Ed.2d 908, held that withdrawal of blood samples from petitioner did not constitute a violation of his privilege against self-incrimination. There, the Supreme Court of the United States said in part:

"[T]he privilege is a bar against compelling 'communications' or 'testimony,' but that compulsion which makes a suspect or accused the source of 'real or physical evidence' does not violate it."

Referring to intrusions into the human body to obtain a blood sample, the Supreme Court said in part as follows:

"[T]he Fourth Amendment's proper function is to constrain, not against all intrusions as such, but against, intrusions which are not justified in the circumstances, or which are made in an improper manner. In other words, the questions we must decide in this case are whether the police were justified in requiring petitioner to submit to the blood test, and whether the means and procedures employed in taking his blood respected relevant Fourth Amendment standards of reasonableness."

■ In the case at bar there was probable cause for the police to arrest the appellant and, seeing the silver particles in his hair, Detective Snipes was justified in requiring appellant to "rub his head" with the paper towel in order to obtain a sample of the particles in his hair. The means and

procedure used were reasonable under any circumstance. Wilson v. State, supra; Schmerber v. State of California, supra. See also Maxwell v. Stephens, 229 F. Supp. 205, affd. (CA 8) 348 F.2d 325, cert. den. 382 U.S. 944, 86 S.Ct. 387, 15 L.Ed.2d 353, Reh. den. 382 U.S. 1000, 86 S.Ct. 532, 15 L.Ed.2d 490, wherein the Eighth Circuit Court of Appeals held that combing a suspect's hair after a lawful arrest to obtain a hair specimen and nylon thread was not violative of the Fourth Amendment.

We conclude, therefore, that having appellant rub his head for the purpose of obtaining samples of the particles therein did not violate either his Fourth or Fifth Amendment rights.

Appellant was arrested on January 3, 1965, and was indicted on July 23, 1965. He appeared in court with his counsel on September 9, 1965, and pleaded not guilty. On March 1, 1967, appellant and his attorney again appeared in court and heard appellant's trial set for March 13, 1967. Thus, a period of approximately twenty months passed from the time appellant was indicted until the date of his trial.

■ In order to obtain the right to a speedy trial, it must be affirmatively shown that a demand for trial was made. Ex parte State ex rel. Attorney General, 255 Ala. 443, 52 So.2d 158; Duncan v. State, 42 Ala.App. 111, 154 So.2d 302; Autrey v. State, 44 Ala.App. 53, 202 So.2d 88.

■ In the instant case it appears that appellant had secured bail and was not incarcerated during the period intervening between his release on bail on January 21, 1965, and his trial on March 13, 1967. There is nothing in the record indicating that there was a demand for a speedy trial nor that there was any objection to the lack of one. We, therefore, conclude that any objection appellant may have had as to the want of a speedy trial was waived by the failure of any affirmative action by appellant, either in person or through his attorney.

It does not affirmatively appear from the record whether or not appellant was represented by counsel at the time he was identified from the line-up at the police station.

The United States Supreme Court in the recent cases of United States v. Wade, 288 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149, and Gilbert v. State of California, 388 U.S. 263, 87 S.Ct. 1951, 18 L.Ed.2d 1178, set out the rule requiring the exclusion of identification evidence tainted by exhibiting the accused to identifying witnesses in the absence of counsel at pre-trial confrontations. However, in Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199, a companion case to the *Wade* and *Gilbert* cases, supra, the Supreme Court concluded that the *Wade* and *Gilbert* rules should not be retroactive. The Supreme Court also said in part in the Stovall case:

" * * * no distinction is justified between convictions now final, as in the instant case, and convictions at various stages of trial and direct review."

The line-up identification of appellant by Talbot as the man who robbed him was made on January 3, 1965. The trial and the in-court identifications of appellant were on March 13–14, 1967.

As the *Wade, Gilbert* and *Stovall* cases, supra, were all decided on June 12, 1967, the rules set forth therein do not apply to the confrontation in the case at bar.

We, therefore, find no error in the admission into evidence of either the line-up identification or the in-court identification of appellant as being the alleged robber.

Had objections been raised and questions thereby created for review by this court, the conclusions herein stated would nevertheless have lead to an affirmance. The foregoing remark is to be treated as dictum.

After diligently searching the record and finding no material error therein, we conclude that this cause is due to be and the same is hereby

Affirmed.