[No. 39693. Department One. December 13, 1968.]

THE STATE OF WASHINGTON, *Respondent*, v. LUFFMAN DOW JESTES *et al, Appellants.**

*Burton R. Johnson, Warren Cameron*, and *Frank J. Owens*, for appellant (appointed counsel for appeal).

*Harold R. Koch* and *Fred D. Gentry*, for respondent.

*Reported in 448 P.2d 917.

HALE, J.—Someone stole Mrs. Patten's car. Her daughter, Margaret Jean, accompanied by a friend, had parked the black 1950 Ford 2-door in downtown Olympia, taking the ignition key with her. The two young women went to the movies and, on their return to the parking lot about 11:30 p.m., the car was gone. When left at the parking lot that Monday evening, November 7, 1966, the car had no extraneous articles in it except a couple of throw rugs and a cooking utensil, but, on its recovery by the Washington State Patrol the following Wednesday morning, November 9th, it was found loaded with camping equipment and gear.

Roger L. Ruzizka, weighmaster for the Washington State Patrol, on duty at the truck scale, on Highway 101 about 4 miles south of Cosmopolis, noticed a black Ford sedan traveling slowly south at about 5 miles per hour; he could hear the engine misfiring. He saw the car pull over to the shoulder of the highway and stop "as if the engine had got too hot or just froze up and quit." It turned out that the ignition wires had been pulled and entwined to close the circuit so that the car would start without a key.

Mr. Ruzizka described the episode in his testimony:

The driver stepped out of the vehicle, raised the hood, was racing the engine. He was under the hood for quite awhile—for a minute or two—stepped back, got back into the car and sat there for a half minute or so and then both the driver and the passenger in the car, on the righthand side, —both got out, lifted the hood again, and I believe looked at the engine there. Then they lifted the hood up, stepped back to the car, each reached in on his own side and picked up a haversackful of camping gear or something and put this on their back. They were both wearing hip boots and they turned on their parking lights, shut the doors, glanced at the scale, and turned and walked south on the shoulder of the road, at this time hitchhiking or attempting to solicit a ride. I waited for oh, I'd say one or two minutes, and thought this was quite funny, that they should look at assistance—scale—and not ask for help. At this time, I stepped out of the scale house, locked it and got in the car and turned on my radio and started down the road. I came up on this older model Ford; I radioed the State Patrol in Hoquiam

and asked them to check stolen cars to find out if the vehicle was stolen. At this time they immediately replied this was a stolen vehicle, so I told them where the vehicle was and there were two men walking towards the roadway, had just left the vehicle, and asked them to send a line trooper at this time to assist. I contacted the two gentlemen, asked them where they were going, and they said they were going to Portland, which was southerly from the scale toward the Coast. I asked them to get in my car and I said that possibly they could receive assistance better at the scale house in attempting to get a ride. At this time they proceeded back to the scale with me. We got to the scale house, it was still raining quite hard, and I asked them to step inside there and wait for awhile. I also, before arriving back to the scale, —I radioed the State Patrol and asked for a driver's check, giving name and description in case anything should happen that the patrol would know who the people were that were with me at the time. As we went back to the scale, a public service gentleman with the Utilities & Transportation Commission was passing by and I signaled him to come back to the scale house, which he did. I just carried on a conversation for fifteen minutes in the scale house until the arrival of the state trooper. I left the scale and informed the trooper of this being reported as a stolen vehicle and that the two men in the vehicle were in the scale house, told him what had happened, and he came in and we advised the two men they were under arrest for theft of a motor vehicle in the State of Washington. We searched them. One had a machete, the other had a hatchet. These were removed. The gentlemen were placed in the patrol car for the other trooper. I still have the haversacks in my car, which they left there. And the gentlemen were then transported out of my presence from the scale to the county jail at Grays Harbor.

According to Ruzizka, the officers found in the car "a large amount of camping gear, sleeping bags, . . . a large box of tools, an outboard motor." The defendants were wearing fishing waders and small snap brim hats, an attire which Mr. Ruzizka thought peculiar for two men who said they were just passing through en route to Portland. Defendants' possession of the outboard motor, camping gear and tools was never explained in the record. Al-

though the Pattens proved their ownership of the car, they had not seen the defendants before and had no knowledge whatever of the equipment found in it.

Charged by information and found guilty by a jury, the defendants now appeal a conviction of taking an automobile without the owner's permission under RCW 9.54.020. Defendants first assign error to denial of a speedy trial under both Const. art. 1, § 22 (amendment 10), and the 60-day statute (RCW 10.46.010), and also to the admission of certain written, signed statements acknowledging guilt —statements which were received along with other abundant evidence of guilt.

On the question of speedy trial, the record shows that the information was filed November 10, 1966, and a warrant issued that same day while the two defendants were in custody. November 15th, the court appointed counsel for the defendants, and they were arraigned pursuant to written notice December 12, 1966. Formal order of arraignment entered December 22, 1966, shows that the defendants had counsel at arraignment and entered pleas of not guilty.

At the time of arraignment on December 12, 1966, Thurston County Superior Court had no jury or venire then in attendance. The next venire was scheduled to report to the court in early April. With entry of the pleas of not guilty, the cause, according to the order on arraignment, was "noted up" for trial by jury during what is designated in Thurston County as the spring jury term. At arraignment, the defendants made neither mention of nor motion for an early trial, nor did either intimate that his defense would be prejudiced by trial held after expiration of the 60-day statutory period. Thus, in open court with the defendants and their counsel present, the case was routinely set for trial without protest of the trial date or application for an earlier one.

Then, after trial setting, the defendants again appeared in open court with counsel and argued a motion for separate trials. At this hearing, neither of the defendants suggested that trial in April would prejudice him in the prepa-

ration or presentation of his defense nor did either one move for an earlier trial. The court denied the motion for separate trials. Later, defendant Jestes personally appeared before the court and asked, and the court allowed, that his counsel be discharged and new counsel appointed. January 25, 1967, the court appointed trial counsel Burton Johnson. March 16th, each defendant separately moved to dismiss the information under RCW 10.46.010, on the ground that trial had not been held thereon within 60 days of the filing of the information. This motion the court denied. The case came on for trial on March 27, 1967, without jury under Rule of Pleading, Practice and Procedure 101.20W, RCW vol. 0 (now Criminal Rule for Superior Court (CrR) 101.20W, RCW vol. 0), to determine admissibility of the confessions and for trial by jury April 26, 1967.

■ The right to a speedy trial attaches with the formal filing of an information or indictment under Const. art. 1, § 22 (amendment 10), and under the sixth amendment to the Constitution of the United States made applicable to the states by the Fourteenth Amendment. *Klopfer v. North Carolina*, 386 U. S. 213, 18 L. Ed. 2d 1, 87 Sup. Ct. 988 (1967). Three basic purposes underlie the constitutional right to a speedy trial: To protect individuals from prolonged imprisonment in advance of trial; to shorten the period of public suspicion, ignominy and anguish arising from one publicly accused but at liberty awaiting trial; and to curtail damage and prejudice to the defense produced by delay. 21 Am. Jur. 2d *Criminal Law* § 242 (1965). *United States v. Ewell*, 383 U. S. 116, 15 L. Ed. 2d 627, 86 Sup. Ct. 773 (1966); *People v. Prosser*, 309 N.Y. 353, 130 N.E.2d 891, 57 A.L.R.2d 295 (1955); *Hedgepeth v. United States*, 364 F.2d 684 (D.C. Cir. 1966). There are, of course, other cogent reasons why criminal trials should be early held and expeditiously tried, but these reasons, although involving matters vitally affecting the general administration of criminal justice and the public welfare, do not affect the issues of this case.

■ Defendants, as earlier noted, assert claims for a speedy trial under the federal and state constitutions and

also under the 60-day statute, RCW 10.46.010. We first take up the constitutional question. As with most constitutional rights, the right to a speedy trial may be waived. In some cases, it may well be that the accused sees in delay a boon to his cause and deems it to his advantage to postpone the trial. Consequently, unless he is genuinely unaware of his right to a speedy trial or has been deprived of opportunity to seek a speedy trial, the constitutional right should be deemed waived if the defendant has not taken affirmative steps to assert the right. *Shepherd v. United States,* 163 F.2d 974 (8th Cir. 1947); *United States v. Santos,* 372 F.2d 177 (2d Cir. 1967). Thus, although the right to a speedy trial attaches with the arrest and filing of formal charges, if the defendant wants an early trial or intends to claim a prejudice to his defense by reason of delay, he should request an early trial. The authority is overwhelming that failure to demand an early trial is deemed a waiver of the constitutional right to one. *Fleming v. United States,* 378 F.2d 502 (1st Cir. 1967); *United States v. Sanchez,* 361 F.2d 824 (2d Cir. 1966); *United States v. Haller* (involving a 5-year delay), 333 F.2d 827 (2d Cir. 1964), *cert. denied,* 379 U.S. 921, (1964), *rehearing denied,* 379 U.S. 984, (1965); *Harlow v. United States,* 301 F.2d 361 (5th Cir. 1962), *cert. denied,* 371 U.S. 814, (1962), *rehearing denied,* 371 U.S. 906, (1962); *State ex rel. James v. Superior Court,* 32 Wn.2d 451, 202 P.2d 250 (1949).

Defendants came with counsel before the court for arraignment when the case was set to be tried in April; later they appeared with counsel to present and argue a motion. At no time prior to, during or after the trial setting—until the 60 days had run—did either defendant request an earlier trial date or indicate in any way that trial in April rather than earlier would prejudice or damage his defense. Accordingly, having both knowledge of and full opportunity to assert their rights under the constitutions and 60-day statute to an earlier trial and failing to do so, their failure amounted to a waiver.

 Aside from the question of waiver, the courts should look to the possibility of oppression in the adminis-

tering of the criminal law. If the delay has been arbitrary, oppressive, vexatious or prejudicial to the defendant's case, and violates high standards for the administration of criminal justice, or would otherwise in all its ramifications amount to such a delay as to engender an unfair trial or in the interests of fundamental fairness warrant a vacation of the conviction, it abridges the constitutional right to a speedy trial. *State v. Alter,* 67 Wn.2d 111, 406 P.2d 765 (1965); *State v. Brewer,* 73 Wn.2d 58, 436 P.2d 473 (1968). But the record here does not show that the April setting violated these standards. Coming on routinely in the regular order of judicial business in Thurston County for trial setting, the court's order on arraignment fixing the April trial date does not appear to have been either arbitrary, oppressive, vexatious or prejudicial, nor was it shown to make the trial itself unfair. Trial of the case in April did not, therefore, amount to a constitutional denial of speedy trial.

Along with their constitutional right to a speedy trial, defendants assert their statutory rights to a trial within 60 days under RCW 10.46.010, which states:

> If a defendant indicted or informed against for an offense, whose trial has not been postponed upon his own application, be not brought to trial within sixty days after the indictment is found or the information filed, the court shall order it to be dismissed, unless good cause to the contrary is shown.

█ Defendants seek a reversal of the convictions which, as we understand it, means either a new trial or a dismissal. We must, therefore, inquire whether the remedy sought on appeal is appropriate to the error complained. Assuming arguendo an error, is a new trial or dismissal proximate redress to the wrong? Not until March 16th, more than 60 days after the filing of the information, did the defendants take any affirmative steps to bring to the court's attention their dissatisfaction with the April trial date. They moved not for an earlier trial but to have the information dismissed outright. Assuming, without so deciding, that the motion to dismiss under RCW 10.46.010 was

well taken, error in denying the motion then would not, we think, amount to error now on appeal warranting a reversal of the conviction or a new trial, for the statute does not contemplate that violation of the statute creates an immunity from prosecution for felony nor that a new trial be granted solely because of the delay. The enactment expressly declares to the contrary. Under RCW 10.43.010, which states:

> An order dismissing a prosecution under the provisions of RCW 10.37.020, *10.46.010,* and 10.46.090 shall bar another prosecution for a misdemeanor or gross misdemeanor where the prosecution dismissed charged the same misdemeanor or gross misdemeanor; *but in no other case shall such order of dismissal bar another prosecution.* (Italics ours.)

a dismissal under the statute does not bar another prosecution. *State v. Unrein,* 60 Wn.2d 168, 372 P.2d 547 (1962); *State v. Wells,* 72 Wn.2d 492, 433 P.2d 869 (1967), see concurring opinion. Consequently, a mere refusal to grant the motion for a dismissal filed after the 60 days have run does not, standing alone, amount to an error in trial warranting a reversal of the conviction or a new trial. We reached the same result on this question in *In re Woods v. Rhay,* 68 Wn.2d 601, 414 P.2d 601 (1966), *cert. denied,* 385 U.S. 905, 17 L. Ed. 2d 135, 87 Sup. Ct. 215 (1966), where the defendant entered a plea of guilty after having been denied his constitutional right to a speedy trial. See, also, *State v. Johnson,* 71 Wn.2d 239, 427 P.2d 705 (1967), for the idea that there may be harmless constitutional error not warranting a new trial. The remedy sought there was not and in the case before us is not proximate to the wrong asserted.

RCW 10.46.010 expressly states that the right to a trial within 60 days of the filing of an information or finding of an indictment is not absolute but subject to the qualification that the court shall order the charge dismissed *"unless good cause to the contrary is shown."* (Italics ours.) Courts are obliged to give effect to all of the words of the statute, and we thus must look further into the circumstances to

see if good cause existed for setting trial beyond the 60-day period.

At the time of the arraignment and plea of not guilty, no jury venire was then sitting in Thurston County, and neither defendant requested that a special venire be summoned to try his case. The court, consequently, had no substantial, apparent reason to summon a special venire in exercising its discretion on the question of whether there was good cause shown to require it, or to decide whether the court should, sua sponte, put the county to the extra expense of a special venire. Instead, in the orderly and routine dispatch of judicial business, the court set the case for trial at the next succeeding regularly scheduled jury term of the superior court for that judicial district. Good cause to the contrary was not shown in this record.

This precise question, under the 60-day statute (RCW 10.46.010, 10.43.010), came before us recently in *State v. Herr,* 70 Wn.2d 446, 423 P.2d 631 (1967). There, the offense was charge to have been committed March 1, 1965, and the information filed October 19, 1965, with counsel appointed the next day. Arraignment, held November 3, 1965, took place as the fall jury term was coming to an end. Since there would be no jury routinely in attendance until the next jury term, the case was continued for trial setting to February 7, 1966, and at that time set for trial on February 28th. Neither at arraignment nor at trial setting did the defendant move for a trial within 60 days, or a speedy trial, or claim any prejudice to his defense. He did, however, after the 60 days expired, as in the instant case, move for dismissal under RCW 10.46.010.

■ In holding that, where no jury is in attendance but one is subject to call within a reasonable time, putting the case over until the next regular jury session is good cause under the statute, we said, at 450:

> While it is conceivable that the winter jury term could have been especially extended to accommodate the defendant, we find no circumstances here that required such action by the court. Thus, there being no jury panel immediately in attendance good cause for the delay ap-

pears, and the resultant deferral of his trial until the next jury term did not violate RCW 10.46.010 nor his right to a speedy trial . . . .

Our decision in *State v. Jesse,* 65 Wn.2d 510, 397 P.2d 1018 (1965), again ruled directly on this point and we held it no ground to reverse where a motion for speedy trial was denied in June and the case tried in September, more than 60 days after the filing of the information. We said, at 511:

The superior court denied the motion to dismiss on the grounds that the Pierce County Superior Court does not attempt to maintain jury panels and jury trial calendars during July and August for obvious reasons. This necessary practice has consistently been held to be "good cause" for delaying a trial under RCW 10.46.010. *State v. Jenkins,* 19 Wn. (2d) 181, 185, 142 P. (2d) 263 (1943); *State v. Vukich,* 158 Wash. 362, 364, 290 Pac. 992 (1930). We see no reason to depart from this view in this case as no prejudice has been shown.

Good cause for holding the trial after the 60-day period is shown, therefore, if there is no jury venire then in existence to try the case within the statutory period, and a jury has been or in the usual course of events will be summoned within a reasonable time thereafter, and the accused has neither requested an early trial nor shown prejudice to his cause by awaiting the next venire. In the absence of a showing that the defense of the case will be damaged or prejudiced by holding trial after the 60-day period, the setting of the case for trial before the next jury term would be good cause, unless the next jury term is so far away as to be oppressive and vexatious. *State v. Jenkins,* 19 Wn.2d 181, 142 P.2d 263 (1943); *State v. Winchell,* 14 Wn.2d 420, 128 P.2d 643 (1942).

Defendants assign error to the admission of their written confessions, but the record shows this assignment to be without merit. The trial court held pretrial hearings on the confessions pursuant to RPPP 101.20W (now CrR 101.20W), and made findings of fact and conclusions of law holding the confessions to have been voluntarily made and constitutionally received. Along with abundant proof of

guilt, we find that the record well supports these findings and conclusions, and conclude that the confessions were properly admitted.

Affirmed.

FINLEY, C. J., ROSELLINI and NEILL, JJ., and DONWORTH, J. Pro Tem., concur.

January 8, 1969. Petition for rehearing denied.