**STATE of Missouri, Respondent,**

v.

**Phillip HARPER, Appellant.**

**No. 55299.**

Supreme Court of Missouri,
En Banc.

Dec. 13, 1971.

John C. Danforth, Atty. Gen., Jefferson City, Charles B. Blackmar, Special Asst. Atty. Gen., St. Louis, for respondent.

Cable & Seabaugh, Kennett, for appellant.

HOLMAN, Judge.

Defendant, Phillip Harper, charged with murder in the first degree in the killing of James Arnold, Jr., was found guilty of manslaughter and his punishment fixed

by the jury at five years' imprisonment. See §§ 559.010, 559.070, and 559.140.[1] He has appealed. We affirm.

This appeal was originally heard in Division Two where an opinion was adopted but the case was transferred to Court en Banc because of the dissent of one of the judges. After the case was argued en Banc the Division opinion failed of adoption and the case was assigned to the undersigned. Portions of the Division opinion are here adopted without the use of quotation marks.

As of necessity he must, Harper admits that he shot and killed James Arnold, Jr. (hereinafter referred to as "Junior") while Junior sat at or arose from a stool in the tavern in Cardwell known as the Bootheel Cafe. Harper, age 29, fired five shots from a .25 caliber Browning Automatic pistol into Junior at close range, dropped his gun to the floor and walked out. Junior and Harper, both large men, had had several prior encounters. About six months previously they had engaged in a knife fight but friends separated them and they had a "fair fight" with fists. Harper "got the better of him," knocked him down once or twice and, he said, "I think that was why he was after me." In any event, on Saturday, November 25, 1967, Junior and Harper had played pool at "Winks Club" in Paragould, Arkansas, where they were both well known, and Junior had lost ten or more dollars to Harper. There Junior got "real mad and told me he was going to kill me." The balance of the day and into the night Junior and Harper again met as they drank from tavern to tavern in Arkansas and Missouri, Harper claiming that all the while Junior was following him and repeatedly, as Harper's adherents reported to him, threatened to kill him. About closing time, one o'clock in the morning of November 26, Harper was in the Bootheel Cafe. He saw Junior come in one door so he "went out the other door because I didn't want no trouble."

Nevertheless, he testified, "I took my pistol out of the car and put it in my right rear pocket" and returned to the cafe through the front door "to talk Junior out of it." Junior was sitting on a bar stool just inside the door and Harper says that as he walked in Junior "collared" him and again threatened to kill him. As Harper again started to leave Junior arose from the stool, said "You are not going to do nothing here or no place, you son-of-a-bitch," and "run his hand in his pocket" and "made a grab at me." Harper said, "I thought he was going to kill me," so he grabbed his gun and started shooting. One bullet entered Junior's jaw and "four in his chest." Needless to say, in these circumstances, despite Junior's known reputation as a gun and knife toter, and a very quarrelsome and dangerous man, the jury could and did reasonably find the appellant guilty of manslaughter.

Harper, as indicated, does not question the sufficiency and cogency of the evidence; he claims that he is entitled to a new trial by reason of newly discovered evidence. The newly discovered evidence came from Billy Davis, from Paragould and St. Louis. Sometime after the trial, quite by chance, he (Billy Davis) encountered Harper in Cardwell, told him he was "sorry about the way the trial went," and Harper lamented the fact "that there was no evidence that Junior had a gun." Whereupon Billy Davis said, "Well, I don't know whether he had the gun or not when the shooting took place but he had one when I was there." And so Billy proposed to testify that on Saturday, November 26, he was on his way home from St. Louis (about 11:30 p. m.) and "I had to use the rest room and I stopped at the Bootheel and went into the rest room. I was using the toilet and Junior walked in and he takes a small caliber automatic pistol from his pocket and takes the clip out and pushes it back in and I looked at him and spoke to him and he always replied and always spoke to

I.  Statutory references are to R.S.Mo., 1969, V.A.M.S.

me because I knowed him for approximately ten years." He says that Junior "stuck it back in his pocket" and walked out; "he didn't exactly look drunk, but he had a silly look in his face as if he was angry or mad about something."

In shooting and killing Junior Arnold, Harper of course claimed self-defense. He also claims that there was no evidence available at his trial to show that Junior had a pistol, that the proffered testimony of Billy Davis meets all the requirements of newly discovered evidence, and that such entitles him to a new trial.

■ "The requirements for securing a new trial because of newly discovered evidence are '(1) that the evidence has come to the knowledge of the defendant since the trial, and (2) that it was not owing to his want of due diligence that he did not discover it sooner, and (3) that the evidence is so material that it would probably produce a different result on a new trial, and (4) that it is not cumulative only or merely impeaching the credit of the witness.'" State v. Harris, Mo.Sup., 413 S.W.2d 244. It should also be noted that the trial court is vested with a great deal of discretion in deciding whether a new trial should be granted because of newly discovered evidence and that courts do not favor the granting of new trials upon that ground. State v. Green, Mo. Sup., 305 S.W.2d 863.

There was evidence to the effect that after Junior had been dragged out onto the sidewalk a pistol was seen lying by his right side. Also, the operator of a night club in the area testified that at about 11:30 p. m. on the night of the shooting, Junior tried to borrow a gun from him, saying that he was going to kill Phillip Harper.

Defendant testified that he knew of his own knowledge that Junior Arnold always carried a gun, knife, and "knucks." When it is considered that there was evidence that Junior had made several threats to kill defendant "that night," and that Junior

had a reputation not only for being quarrelsome and dangerous but also for carrying a gun, there was apparently a reasonable basis for defendant to think that "he was going to kill me" when he started shooting at Junior. It should be remembered that the instruction submitting self-defense contained a provision that "it is not necessary to this defense that the danger should be actual or real, or that the danger should have been impending and immediately about to fall. All that is necessary is that defendant had reasonable cause to believe, and did believe, these facts." It was therefore not so important to the defense to show that Junior actually had a gun as it was that defendant, with reasonable cause, believed that he did. In view of the substantial evidence to support that belief (which was defendant's sole theory of defense) we do not conclude that the Davis testimony tending to indicate that Junior may have had a gun would produce a different verdict in the event of another trial.

■ Considering the cumulative nature of the proffered testimony, and the fact that it was not of the quality likely to produce a different verdict, we rule that the trial court did not abuse its discretion in refusing to grant a new trial on the ground here considered. State v. Hatfield, Mo. Sup., 465 S.W.2d 468; State v. Watson, Mo.Sup., 400 S.W.2d 129.

■ The principal point briefed by defendant is that the court erred in overruling his motion for discharge which was based upon his failure to receive a speedy trial. While he mentions the general constitutional provision contained in the Sixth Amendment to the U. S. Constitution, and Art. I, § 18(a), Missouri Constitution, V.A. M.S., his specific reliance is upon §§ 545.900 and 545.920. The first mentioned section reads as follows:

"If any person indicted for any offense, and held to answer on bail, shall not be brought to trial before the end of the third term of the court in which

the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term."

Section 545.920 provides that if the county has more than two terms of court a year, and defendant is on bail, he shall not be entitled to be discharged until after the end of the fourth term.

The record discloses that the information was filed in the circuit court of Dunklin County on December 29, 1967. On February 7, 1968, a change of venue was granted to Stoddard County. As provided in § 478.295, that county has terms of court beginning in April, August, and December of each year. The record is silent as to any action in this case during the April, August, and December terms of 1968. The first record entry in Stoddard County appears on June 26, 1969 (April term), as follows: "Defendant appears in person and by counsel, Charles M. Cable, and State by Franklin P. Holder, Prosecuting Attorney. Defendant waives formal arraignment and enters a plea of not guilty. Cause is set for trial on November 7, 1969." The "Motion for Discharge" was filed and overruled on November 1, 1969. No evidence was offered on the motion.

There can be no question but that defendant (at liberty on bail) was not tried until after the end of the fourth term after the case was lodged in Stoddard County. Obviously, our task is to decide whether that fact, on this record would require his discharge under the provisions of the foregoing statutes. Our task is made difficult by reason of a definite conflict in the decisions of this court on the question presented. The cases of State v. Wear, 145 Mo. 162, 46 S.W. 1099, and State ex rel. Stevens v. Wurdeman, 295 Mo. 566, 246 S.W. 189, support defendant's contention that he was entitled to be dis-

charged. In Wurdeman the court stated: "The statute is mandatory, and imposes upon the state the duty to bring the defendant to trial 'before the end of the third term of the court' after the term at which the indictment was found. The burden is upon the state to exclude the exceptions." 246 S.W. l. c. 194. The court, in Wear, indicated a similar view and stated that "it was not incumbent upon the defendant to demand a trial at any term of court, or at any time, in order to entitle him to be discharged. The statute imposes no such duty, but expressly provides that, if the party under indictment be not brought to trial before the end of the third term after the indictment is found, he shall be entitled to be discharged." 46 S.W. l. c. 1109.

The State, however, relies on another line of cases which indicate a contrary view. In State v. Haines, 160 Mo. 555, 61 S.W. 621, at 624, it is stated that "it must now be considered as settled law in this state that in the construction of these sections providing for a discharge that they 'were intended to operate only when there is some laches on the part of the state.' State v. Huting, 21 Mo. 464; State v. Marshall, 115 Mo. 383, 22 S.W. 452; State v. Billings, 140 Mo. 193, 41 S.W. 778. * * * The silence of the record at the April term is the only circumstance upon which the defendant could have based his motion for discharge, but, as was said in State v. Marshall [supra], in the absence of proof to the contrary, it must be presumed that the case was continued for want of time to try it." A number of other cases hold that there must be some laches on the part of the state, or that it is presumed that a completely silent record during a term indicates delay (absent proof to the contrary) for a cause which would not be a ground for release. See State v. Nelson, Mo.Sup., 279 S.W. 401, State v. Pierson, 343 Mo. 841, 123 S.W.2d 149, State v. Barlish, Mo.App., 421 S.W.2d 558, and State v. Hicks, 353 Mo. 950, 185 S.W.2d 650.

It is our purpose in this case to arrive at a correct construction of the statutes involved so that the aforementioned conflict will be settled and cease to exist. " 'When called upon to construe a statute, the court's prime duty is to give effect to the legislative intent as expressed in the statute. To this end we are guided by certain well established and recognized rules, among which are the following: (a) The object sought to be obtained and the evil sought to be remedied by the Legislature; (b) the legislative purpose should be assumed to be a reasonable one; (c) laws are presumed to have been passed with a view to the welfare of the community; * * *.' " In re Tompkins' Estate, Mo. Sup., 341 S.W.2d 866, 872.

Our research in the area under consideration has led to the discovery that many of the other states have similar statutes and have been faced with a similar problem of construction. We consider the decisions in those states to be helpful in our efforts to solve the question before us. "It has been held generally that an accused is not entitled to a discharge for delay in bringing him to trial unless it appears that he resisted postponement, demanded a trial, or made some effort to procure a speedier trial than the state accorded him. So, it is ordinarily deemed that a defendant, in the absence of such effort, has waived his right to a speedy trial under the Constitution and the statutes in aid thereof." Anno: Speedy Trial—Loss of Right, 57 A.L.R.2d 326. See also Anno. 129 A.L.R. 587. The Iowa Supreme Court ruled the question by stating that "It is our conclusion that the petitioner not having resisted postponement, or demanded a trial, or made any effort to bring his case on for trial, waived any right to a dismissal under the provisions of section 14024. In so holding we are not reading anything into the section which was not fairly and reasonably within the intention of those who enacted it. Our decision herein is in accord with the uniform holding of the courts generally. In no constitutional or statutory provision requiring speedy trial, is

there any condition that a failure to demand trial will defeat the accused's motion for a discharge, yet the courts, with but few exceptions have construed the provisions as though they contained such a condition." Pines v. District Court, 233 Iowa 1284, 10 N.W.2d 574, 583. In making a similar ruling in a later case that court said: "It has been well said that the rights given the accused by the constitution and our statutes are shields, not weapons, and being so intended by the legislature, we must give meaning to that intent. If this is true, what must one do in order to use the shield? Must the state carry it for him? We think not." McCandless v. District Court, 245 Iowa 599, 61 N.W.2d 674, 678.

In Oklahoma, the court has said that "in construing the above constitutional and statutory provisions we have consistently held that where a person is on bond, the burden is on him to show that he has demanded trial, or that he objected to the continuance from term to term. As stated by Judge Doyle, a defendant who has never demanded a trial or been refused trial, is not entitled to be discharged." Payne v. State, Okl.Cr., 388 P.2d 331, 334. The court, in another of our neigboring states, has expressed the same view by stating that "in order to justify a discharge of the accused on such a motion, 'he must have placed himself on the record in the attitude of demanding a trial, or at least of resisting postponement.' " Williams v. State, 210 Ark. 402, 196 S.W.2d 489, 490. And we note the expression of the Minnesota court that "[t]he constitutional and statutory provisions for a speedy trial are for the protection of the defendant, but that does not mean that the state is the only one that may initiate action. There is really no reason for the courts to free an accused simply because a dilatory prosecutor has 'gone to sleep at the switch' * * * while the defendant and his counsel rest in silence. We hold that these solicitous provisions are not to be used as offensive weapons, but are for the benefit of defendants who claim their protection. * *

There is no just reason why an accused should not demand a trial, resist a postponement, or take some action indicating to the court that he believes he is being deprived of his statutory or constitutional rights * * *." State v. McTague, 173 Minn. 153, 216 N.W. 787, 788. To similar effect see also Kominski v. State, Del., 1 Storey 163, 141 A.2d 138 [2], Chelf v. State, 223 Ind. 70, 58 N.E.2d 353 [14, 15], State v. Jestes, 75 Wash.2d 47, 448 P.2d 917 [5, 6], State v. Dinger, 51 N.D. 98, 199 N.W. 196 [1], and City of Casper v. Wagner, 74 Wyo. 115, 284 P.2d 409.

This court has said that "[s]tatutory enactments of this nature may be waived by a defendant, being enacted for the benefit of an accused and implementing his constitutional right to a speedy trial. They, as their language indicates and as has been held, are to prevent unreasonable delays in prosecutions, forestalling the protracted imprisonment or harassment of one accused of crime. Their purpose is not to furnish a technical escape from trial and punishment or to forfeit any rights of the public, when the public's representatives are not at fault, to safeguard that law and order necessary for the preservation of society and made effective through the punishment of criminals for their wrongs." State v. Hicks, 353 Mo. 950, 185 S.W.2d 650, 651. In order to effectuate the purpose of these statutes we see no reason to hold that the entire burden of getting cases to trial promptly is upon the state and we do not believe that such was the legislative intent. We think it is reasonable to say that the legislature intended to provide a means of insuring every defendant a "speedy trial" if he wants such a trial. It was never intended, in our judgment, to place such an arbitrary duty on the state that a defendant who does not desire a prompt trial can sit idly by without objecting to the delay or requesting a trial and, at the appropriate time, successfully assert a motion for release claiming that his right to a speedy trial had been violated and that he should go "scot free." We accordingly hold that a defendant is not entitled to be released under the statutes in question (assuming the statutory exceptions are not applicable) simply because the required number of terms have elapsed. In addition to that he must show that he has demanded a trial, and that such request was made without success for a reasonable length of time before his right to release has been asserted. Our ruling is based on the theory (as stated in many of the cases cited) that a defendant's failure to take affirmative action seeking a speedy trial constitutes a waiver of that right. The Wurdeman and Wear cases, supra (and any other Missouri cases holding contrary to the views herein expressed), should no longer be followed.

As indicated, we rule that since defendant did not seek an earlier trial than the one accorded him the trial court acted correctly in overruling his "Motion for Discharge."

The judgment is affirmed.

DONNELLY, MORGAN, and HENLEY, JJ., concur.

FINCH, C. J., dissents in separate dissenting opinion filed.

SEILER and BARDGETT, JJ., dissent and concur in dissenting opinion of FINCH, C. J.

FINCH, Chief Justice (dissenting).

I respectfully dissent. I would hold that §§ 545.900 and 545.920, V.A.M.S., are applicable and that it is mandatory under their provisions that defendant's motion to be discharged be sustained.

The principal opinion quotes § 545.900, but I repeat it to demonstrate that its provisions are clear and unambiguous and do not call for any construction. The section reads as follows:

"If any person indicted for any offense, and held to answer on bail, shall not be

brought to trial before the end of the third term of the court in which the cause is pending which shall be held after such indictment found, he shall be entitled to be discharged, so far as relates to such offense, unless the delay happened on his application, or be occasioned by the want of time to try such cause at such third term."

The only thing added by § 545.920 is that when a defendant is at liberty on bond (as defendant was) and the county has more than two regular terms a year (as Stoddard County did), a defendant is not entitled to be discharged until four terms have passed without trial.

It is undisputed that after this case went to Stoddard County on change of venue, four terms in Stoddard County passed without defendant being tried. Hence, the issue squarely presented is whether, under §§ 545.900 and 545.920, the passage of those four terms without any showing that the delay happened on defendant's application or was caused by want of time to try the case entitles defendant to be discharged.

The rule is well established that criminal cases are to be construed strictly against the state and in favor of the accused. State v. Chadeayne, Mo., 323 S.W.2d 680; State ex rel. Stevens v. Wurdeman, 295 Mo. 566, 246 S.W. 189; State v. McClary, Mo.App., 399 S.W.2d 597. Sections 545.900 and 545.-920 expressly state that a defendant shall be entitled to be discharged as to an offense if four terms pass without the case being brought to trial unless (1) "the delay happened on his application" or (2) the delay "be occasioned by the want of time to try such cause" at the fourth term (in the factual situation here presented). I submit that this language could not be clearer or more direct. If the requisite number of terms pass (variable only on the basis of whether defendant is on bail and whether the county has more than two regular terms), defendant is entitled to be discharged subject only to the specifically delineated statutory exceptions. Neither of these is applicable here. Hence, it is clear

under the unambiguous language of the statute that defendant was entitled to be discharged.

This would have been the result under our earlier cases of State v. Wear, 145 Mo. 162, 46 S.W. 1099, and State ex rel. Stevens v. Wurdeman, supra. The principal opinion overrules both of those cases. I believe that both are sound and correctly construe these statutory provisions. They should be followed, not overruled.

The principal opinion writes into these statutory provisions something which the legislature did not say either expressly or by implication. It wrote in two exceptions in the statute. The principal opinion now writes in a third which says, "We accordingly hold that a defendant is not entitled to be released under the statutes in question (assuming the statutory exceptions are not applicable) simply because the required number of terms have elapsed. In addition to that he must show that he has demanded a trial, and that such request was made without success for a reasonable length of time before his right to release has been asserted."

Adding this third proviso to the two specified in § 545.900 is, in my judgment, judicial legislation. As a result of this third proviso the statute now is not to be applied, even though the delay was caused by the state, *if* defendant did not demand a trial *and* continue to do so "without success for a reasonable length of time." This simply is not what the legislature said when it wrote these statutory provisions and is not how this Court en Banc in Wurdeman and Wear interpreted these statutory provisions.

This is a statute of limitation. A defendant is entitled to have it applied as written, just as a defendant in a criminal case is entitled to the benefit of a statute of limitation relating to the time in which prosecution must be commenced, and a party in civil litigation is entitled to the benefit of the particular statute of limitation applicable to that type of claim. In

such circumstances a person is not required to take affirmative action and ask that a prosecution be instituted or that suit be brought as a condition to claiming the benefit of the applicable statute of limitation. The mere passage of the requisite period of time is sufficient to make the limitation effective, absent, of course, some applicable statutory exception or an affirmative waiver by the person. The same should be true here. The passage of the required period brings this limitation into play unless a statutory exception applies or defendant affirmatively waives the statute. Waiver does not occur by silence or by failure to actively demand a trial.

I recognize that the majority rule in this country probably is as the principal opinion states. However, there is a contrary line of authority. Annotation, 57 A.L.R.2d 302, 334.[1] I will not lengthen this dissent by discussing these cases. Their philosophy is well stated in Zehrlaut v. State, 230 Ind. 175, 102 N.E.2d 203, 207:

"The statute * * * is a limitation upon the right of the state to hold a person by recognizance to answer a criminal charge. * * * it casts no burden upon the defendant, but does cast an imperative duty upon the state and its officers, the trial courts and prosecuting attorneys, to see that a defendant held on recognizance is brought to trial agreeable with * * * the constitution and its implementing statute. It is not a fault of the defendant if he remain silent while under recognizance, * * * that is his right. He is not required to make any demand of the state or the court for a speedy trial. * * * A contrary statement made by this court in Chelf v. State, 1944, 223 Ind. 70, 58 N.E.2d 353 is hereby overruled."

In my view, the minority rule is the correct one. It is the one adopted by the American Bar Association in its Standards for Criminal Justice. In its volume "Standards Relating to Speedy Trial," page 16,

Standard 2.2, relating to the running of time limits, it is stated that the statute runs "without demand by the defendant." On page 17 of the Commentary the minority rule is noted and then appears this discussion:

"This latter view is adopted in the standard. One reason for this position is that there are a number of situations, such as where the defendant is unaware of the charge or where the defendant is without counsel, in which it is unfair to require a demand. * * * Jurisdictions with a demand requirement are faced with the continuing problem of defining exceptions, a process which has not always been carried out with uniformity. * * * More important, the demand requirement is inconsistent with the public interest in prompt disposition of criminal cases. Consistent with the policies expressed in Part I of these standards, the trial of a criminal case should not be unreasonably delayed merely because the defendant does not think that it is in his best interest to seek prompt disposition of the charge."

There is a growing recognition, as expressed in the above quotation, of the interest of the public in prompt disposition of criminal cases. At the National Conference on the Judiciary at Williamsburg in March 1971, there was strong emphasis on the importance of speedy trial. The Consensus of that Conference included the following statement: "A speedy trial is as essential from the public's point of view as from the defendant's. If a speedy trial cannot be provided, the prosecution should be required to show cause why case should not be dismissed."

Under these circumstances, I think it is unfortunate that instead of enforcing these statutory provisions as written and as interpreted in the Wear and Wurdeman cases, the principal opinion extracts teeth from the statute by writing in a judicial modification saying that the statute will not

---

1. See also Glasgow v. Alaska, 469 P.2d 682, decided subsequent to the foregoing annotation.

be enforced until defendant has taken affirmative action and has demanded trial without success for a reasonable time (whatever that period is determined to be).

It isn't clear to me whether the requirement that defendant request trial for a reasonable length of time before he may assert his right to release means that he must do so only during the last term before the statute runs or whether he must do so during each term if it is to be considered in the computation, or just what the burden now imposed on defendants will be. Also, one can only wonder what the situation will be if defendant is without counsel and does not demand trial. Will the statute not run under these circumstances?