STATE of Missouri, Respondent,

v.

Stanley E. WADE, Appellant,

STATE of Missouri, Respondent,

v.

Stanley E. WADE, Appellant.

Nos. WD 32357, 32664.

Missouri Court of Appeals,
Western District.

April 20, 1982.

Motion for Rehearing and/or Transfer to Supreme Court Overruled and Denied June 1, 1982.

**52** ▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

William Lopez, Independence, for appellant.

John Ashcroft, Atty. Gen., Kristie Green, Asst. Atty. Gen., Jefferson City, for respondent.

Before SHANGLER, P. J., and PRITCH-ARD and DIXON, JJ.

SHANGLER, Presiding Judge.

The defendant Wade was convicted by jury of robbery in the first degree [§ 569.-020] and sentenced to a term of ten years, and of kidnapping [§ 565.110] and sentenced to a term of five years. The trial court denied the motion for new trial and sentenced the defendant according to the jury verdicts, but as consecutive terms. Thereafter, while appeal pended, the defendant moved anew for new trial on the basis of newly discovered evidence. The court denied relief and the defendant appeals separately from that order. The appeals are consolidated for our review.

In the early morning the victim parked his Mustang automobile in the underground garage adjacent to the place of employment. He ascended the stairs and was confronted by a black male [the defendant] who pointed a pistol at him and ordered "Let's go." The victim resisted but then submitted and they walked to the parked Mustang. The assailant demanded the keys but the victim refused to allow anyone else to drive his car, so they entered the car—he, still under the compulsion of a brandished weapon—and the victim drove as the assailant directed. After a half hour of random movement, the assailant directed the victim into a vacant lot. There he was ordered out of the car and into the car trunk. The victim transferred the tent, toolbox and other items, from the trunk into the back seat of the car, and the gunman then forced the victim into the trunk and shut the lid. The gunman then drove around the city for some time, in various directions with various turns. In the meanwhile, the victim removed the taillights and broke the trunk lock which left an aperture to see through. He also managed to undo the lock with a coat hanger. The car stopped and another person joined the driver. The sound of their movements indicated that they unloaded the back seat of the car. They drove off, then stopped and [apparently] walked off. After five minutes, the victim decided to risk escape, extricated himself, found the keys still in the ignition, and drove away. Almost four hours elapsed from the caption until the escape. In the course of that episode the assailant demanded and was given the money the victim had on his person.

The victim reported the crimes to the police. Investigation disclosed a .38 revolver between the front seats of the Mustang—which the victim identified as the

weapon used against him. The victim described the assailant to the police. Thereafter, the victim identified the assailant from displays of police photographs. The police did not disclose to the victim the name of the person identified from the array of photographs. Then about three weeks after the crimes the victim picked the defendant as the assailant from a line-up. The victim next confronted the defendant at the preliminary hearing when, without invitation, the defendant said to him: "Let me go."

The defendant contends that the prosecution failure to disclose that the police displayed to the victim, not one array of photographs, but two or even three—from which the victim made contradictory identifications—was a concealment of material evidence from the defense and violated due process of law.

The defendant made request prior to trial for discovery under Rule 25.32 [now 25.-03(9)] of any material or information within the possession or custody of the prosecution which tended to negate the guilt of the defendant. In response, the prosecution disclosed materials—a police report included, that in the process to establish identification the victim was shown one set of four photographs by Officer McKee, and that the victim identified the defendant from this single attempt. In the course of cross-examination, the victim recounted that the photographic identification process involved two separate displays. The prejudice the defendant contends from the nondisclosure of that event rests on the arguments that the identification from the first array was inconclusive, and that the second array was contradictory to the first. The victim responded on cross-examination that from a first display of six photographs, he identified the defendant to the police by: "Out of these, it would be this one," without more certainty. The cross-examination continued:

Q. Did—*then he showed you some other photographs*; do you remember about how many?

A. It was at least nine. It could have been up to twelve.

Q. All right. As far as you know, *no one else's photograph was repeated in that second group, other than the photograph that you identified*; is that right?

A. *It was a different photograph*, but I didn't memorize each person's face, so I couldn't have told you. They could have repeated some faces.

Q. Or they may not have?

A. They may not have; they may have.

Q. You just don't remember now?

A. *I didn't pay any attention to the faces that were not familiar to me.*

[emphasis added]

This colloquy undermines altogether the contentions of the defendant that the testimony of an identification from a second array of photographs was a surprise and that the second identification contradicted the first. The tenor of the inquiry—on a subject not opened by the prosecutor on direct examination—manifests that defense counsel already harbored information that, in fact, a second series of photographs was shown by the police. That was the very premise of inquiry. [That there was no objection by the defense counsel to answers by the witness otherwise in ostensible violation of the discovery request sustains surmise.] Furthermore, *both* inquiry and response confirm that the identifications by the victim [however tentative] on the successive occasions was of the *same person* but in different depictions.

▪ To prove the right to a new trial, the defendant advances the principle of *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963) [adopted into our procedure through present Rule 25.03 iterated in our decisions]: that the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material to guilt or punishment. There was no intimation that the prosecution knew of the second display of the photographs. We assume knowledge and suppression by the prosecution and determine nevertheless that the second display was not material

either to guilt or punishment within the sense of the principle. A defendant is entitled to the sanction of a new trial when the undisclosed evidence bears decisively—and not only as corroboration—on the issue of guilt [*State v. Allen*, 530 S.W.2d 415, 418[1–3] (Mo.App.1975)] or on the credibility of a witness [*Napue v. People of the State of Illinois*, 360 U.S. 264, 269, 79 S.Ct. 1173, 1177, 3 L.Ed.2d 1217 (1959); *State v. Collett*, 526 S.W.2d 920, 931[12] (Mo.App. 1975)]. The test for prejudice is determined by the nature of the charge, the evidence presented by the prosecution, and the role the undisclosed testimony would likely have played on the return of guilt or punishment. *State v. Dayton*, 535 S.W.2d 469, 476[13–14] (Mo.App.1976).

The evidence of a second display of photographs to the victim was neither material on the issue of identification nor on the credibility of the witness. The defendant does not attempt, nor does the evidence allow, contention that the court identification was not supported by evidence independent of the photographic depictions. The source of that recall was the confrontation by the armed assailant in the lighted stairwell of the car garage, the passage of the victim accompanied closely by the robber through the lighted garage, and the half hour enforced drive—the victim and robber side-by-side. The selection of the defendant from among the lineup was positive, without prior suggestion or other prompting. The antic of the defendant at the preliminary hearing and his plea to "Let me go" also confirms the integrity of the identification. The victim was the principal witness for the prosecution so that the jury estimate of his credibility was material to the assessment of guilt or innocence. That the witness gave contradictory identifications—information withheld from the defense by the prosecution knowingly or even unwittingly—*and that such evidence would likely have affected* the *judgment of the jury* proves prejudice, under the principles the defendant invokes, and the right to a new trial. The successive identifications by the victim, however, were neither contradictory nor, within the context of the full proceedings, of such moment as to have affected the judgment of guilt. *State v. Dayton*, supra, 1.c. 478[15, 16].

The defendant contends also that the denial of a new trial on the contention of newly-discovered evidence was both erroneous and prejudicial. That contention posits the "confession" of one Shelby, the jailmate of the defendant, that he committed the offenses against the victim, as evidence newly discovered and exculpatory of the defendant—by then already convicted. The defendant contends that motion met the multiple prescriptions for a new trial based on newly-discovered evidence under *State v. Harper*, 473 S.W.2d 419, 421[1] (Mo. banc 1971), and that the adjudication of the motion without evidence was a denial of due process.

■ The confession by Shelby to the crimes for which the defendant had recently suffered conviction was disclosed to the court by defense counsel on the oral argument of the first motion for new trial. Counsel then, at the conclusion of argument, recalled still another ground—the Shelby confession—and expressed intention to move again for a new trial on that discovered evidence. There ensued a colloquy among the counsel and the court which disclosed that after the defendant was convicted, Shelby—also detained in the county jail—approached the defendant to confess to the robbery and kidnapping. Shelby was then under two murder charges. The court commented: "I think that evidence should be presented as quickly as possible." The defendant made no request for a hearing and, in due course, the court overruled the successive motion for new trial. The contentions of the newly-discovered evidence, of course, remained only contentions without force until proved. A defendant who does not request opportunity to present proof may not complain that the disposition of the motion went without evidence. *State v. Jones*, 531 S.W.2d 67, 75[8] (Mo. App.1975).

■ We assume the verity of the successive new trial contentions and determine,

nevertheless, that the court was not bound to adjudge relief in favor of the contentions. A precondition, among the several, for a new trial on newly-discovered evidence is that it was not due to the want of diligence that the defendant did not discover the information sooner. *State v. Harper*, supra, l.c. 421[1]. In the course of the colloquy among the court and counsel already noted, the prosecutor disclosed that included in the police Wade file opened to defense counsel was a report given by Shelby to detectives that the defendant committed the crimes charged as well as others together with Shelby. The inferences were clearly that Shelby and the defendant knew each other before the crimes charged against the defendant, that counsel was aware not only of the personal relationship but also of the report of their joint criminal depredations. The contentions taken as true evidence allow the inference also that the proof was not sufficiently credible that it would probably produce a different result on a new trial—still another precondition for relief. *State v. Thompson*, 610 S.W.2d 629, 633[2] (Mo.1981). That was the assessment of the trial court, after consultation with the motion and the Shelby records subject to judicial notice: "This Court is convinced from information contained in those files that Mr. Shelby has little to lose by assuming the responsibility for the robbery for which Mr. Wade was convicted. In addition, Mr. Shelby's files reflect that he has a propensity for boasting about his involvement in other crimes, and subsequently denying those crimes."

The judgment is affirmed.

All concur.